OPINION OF THE COURT
Leslie Crocker Snyder, J.
The defendant Ryan Tai stands indicted for the crimes of conspiracy in the second degree (conspiring to sell or possess a controlled substance in the first or second degree) and criminal sale of a controlled substance in the first degree.
The People seek to introduce against the defendant statements allegedly made by a nontestifying coconspirator during the course of and in furtherance of the conspiracy. The defendant seeks to rebut such evidence by introducing negative character evidence of the nontestifying coconspirator. In addition, the People seek to call a confidential informant as a witness without disclosing his name, address or any identifying information about him.
Three issues of apparent first impression have been presented to this court for decision. First, what evidentiary foundation is required prior to the admission of coconspirator statements in New York in light of the United States Supreme Court decisions in United States v Inadi (475 US 387 [1986]) and Bourjaily v United States (483 US 171 [1987]). Second, whether the defense may call a witness to testify to the negative character of a nontestifying conspirator whose statements have been admitted under the coconspirator exception to the hearsay rule. Third, whether the People may call a confidential informant as a witness without disclosing his name, address or any identifying information where the People can show that such disclosure would place the informant’s life in danger because of his work in this case and in an ongoing investigation and that such disclosure would also jeopardize the new investigation.
I. INTRODUCTION OF COCONSPIRATOR STATEMENTS
Where the People seek to introduce a statement made by *601 a coconspirator, the law is clear that they must first show that the statement was made during the course of and in furtherance of the conspiracy. Also, it is clear, they must establish by prima facie proof the existence of a conspiracy between the defendant and the declarant without recourse to the declarations sought to be introduced. (People v Ardito, 86 AD2d 144 [1st Dept 1982], affd 58 NY2d 842 [1983]; People v Evangelista, 88 AD2d 804 [1982].)
In People v Sanders (56 NY2d 51 [1982]), the Court of Appeals considered a different issue: whether the introduction of prior statements of a deceased coconspirator violated the defendant’s Sixth Amendment rights. Relying upon Ohio v Roberts (448 US 56 [1980]), the court concluded that the unavailability of the coconspirator did not violate the defendant’s Sixth Amendment right of confrontation. While noting that the Supreme Court had not established guidelines governing the relationship between the Confrontation Clause and various hearsay exceptions, our Court of Appeals followed the two-prong test apparently set forth in Ohio v Roberts in deciding that the statements were admissible. (People v Sanders, supra, at 64.) In so holding, the Sanders court ruled that where the People intend to introduce a coconspirator statement as an exception to the hearsay rule, the Confrontation Clause requires a showing that the declarant be "unavailable”, along with sufficient indicia of reliability to allow the trier of fact to evaluate the truth of the prior statement without the benefit of cross-examination. The Sanders court further emphasized that there was not: "any reason which would cause us to recognize a State constitutional right of confrontation broader than the Sixth Amendment guarantee as interpreted by the Supreme Court”. (People v Sanders, supra, at 64-65; emphasis added.) Thus, the Sanders court relied solely upon Ohio v Roberts in rendering its decision, rejecting any broader interpretation under the New York State Constitution.
Four years later, in United States v Inadi (475 US 387, supra), the United States Supreme Court emphasized that Ohio v Roberts (supra) merely reaffirmed the long-standing rule that the prior testimony of a witness not produced at trial requires a finding of "unavailability” as a condition precedent to its admission. The Inadi court specifically held that the Confrontation Clause does not require the prosecution to show the unavailability of the coconspirator whose out-of-court statement the People seek to introduce:
*602 "Under this interpretation of Roberts, no out-of-court statement would be admissible without a showing of unavailability.
"Roberts, however, does not stand for such a wholesale revision of the law of evidence, nor does it support such a broad interpretation of the Confrontation Clause.” (United States v Inadi, 475 US 387, 392, supra.)
In reaching its decision, the Inadi court (supra) distinguished between the introduction of prior testimony into evidence in place of a witness and the admission of statements made during a conspiracy. The court noted that former testimony is generally a poor substitute for live testimony and is devoid of independent indicia of reliability, while the reliability of statements made during the course of and in furtherance of a conspiracy comes from the circumstances and context in which the statements are made. The court pointed out that "[c]onspirators are likely to speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand.” (United States v Inadi, supra, at 395.)
The Inadi court concluded that coconspirator statements have independent value and "are usually irreplaceable as substantive evidence.” (United States v Inadi, supra, at 396.) Thus, in contrast to the misinterpretation of Roberts (supra), admitting coconspirator statements into evidence actually furthers "the Confrontation Clause’s very mission [which is] to advance 'the accuracy of the truth-determining process in criminal trials’ ” (Tennessee v Street, 471 US 409, 415 [1985], quoting Dutton v Evans, 400 US 74, 89 [1970]). Therefore, the Inadi court abolished any requirement that the declarant be unavailable prior to admitting coconspirator statements. (United States v Inadi, supra, at 399-400.)
In the instant case, the court held an Evangelista/Ardito hearing prior to trial and found that the People had made a prima facie showing of a conspiracy between the declarant, Andrew Sun, and the defendant, Ryan Tai, without resort to the statements sought to be introduced. (People v Ardito, 86 AD2d 144, affd 58 NY2d 842, supra; People v Evangelista, 88 AD2d 804, supra.)
While arguing that they are no longer required to make a showing of unavailability, the People also assert that the declarant Sun is "unavailable” because he is currently serving a sentence based upon his conviction in this case. Neither side has attempted to subpoena him from State prison.
*603 Without addressing the merits of the People’s claim of unavailability, this court holds that the declarant need not be shown to be unavailable prior to the introduction of his coconspirator statement and that Sanders (supra) can no longer be viewed as current law in New York in light of Inadi (supra) and other recent Supreme Court decisions. Nor should Sanders continue to be the law, for all of the reasons discussed.
Requiring the People to show that the declarant is unavailable will not aid the truth-seeking process. If the declarant is legally available, both sides will have the opportunity to obtain his appearance by subpoena.[1] Whether the declarant is unavailable or not, the circumstances under which coconspirator statements are made warrant admission of the evidence. In addition, any rule requiring a showing of unavailability would impose an inordinate burden on the courts and on the prosecution. (United States v Inadi> 475 US 387, 399, supra.)
Although not contested here, it should be noted that the People have addressed adequately the second prong of the Sanders "test” — the "indicia of reliability”. Numerous coconspirator statements between the defendant and Andrew Sun have been recorded pursuant to a court-authorized eavesdropping warrant and have been turned over to the defense and introduced into evidence. No clearer indicia of reliability could be envisioned. Nevertheless, Bourjaily v United States (483 US 171, supra) holds inter alla that it is not constitutionally necessary for a court in each case to examine the circumstances of every coconspirator statement to determine its reliability. It is only when an unusual legal issue is presented that such an examination need be performed.[2]
For the reasons set forth above, the court will not require a showing that the coconspirator Andrew Sun is unavailable prior to the introduction of his hearsay statements.
II. IMPEACHMENT OF NONTESTIFYING COCONSPIRATOR
In addition to impeaching the credibility of Andrew Sun by *604 cross-examination of the witnesses who testified to Sun’s out-of-court statements, the defendant seeks to call witnesses to attest to the negative character of Sun.
The general rule of evidence in New York concerning the impeachment of witnesses on collateral matters is clear: the cross-examiner is bound by the answers to questions inquired into solely for credibility purposes. (Richardson, Evidence § 491 [Prince 10th ed].) Extrinsic evidence is not admissible to impeach the witness on collateral matters. (People v Pavao, 59 NY2d 282 [1983].) The purpose of this rule is to prevent numerous minitrials on each of such issues.
In Pavao, however, the Court of Appeals distinguished between impeaching specific answers given by a witness and impeaching the general character of a witness by showing the witness’ reputation for untruthfulness. (People v Pavao, supra, at 289.) The court stated that where the use of extrinsic impeaching testimony is limited to a general statement of a witness’ negative character, the evidence should be admitted. This evidence is an effective means of testing and assessing the credibility of witnesses, and will not result in protracted litigation. The Pavao court held that a party has a right to call a witness to testify that a key opposing witness, who gave substantive evidence, has a bad reputation in the community for truth and veracity. (People v Pavao, supra, at 290.)
The question presented here goes one step further, however: should such negative character evidence be admitted to impeach the character of a nontestifying coconspirator whose hearsay statements have been admitted?
Under Federal law, the extent to which the defense may impeach the credibility of a nontestifying coconspirator was discussed in United States v Inadi (475 US 387, supra) and is codified in the Federal Rules of Evidence rule 806. Rule 806 provides: "When a hearsay statement, or a statement defined in Rule 801 (d) (2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.” The purpose of rule 806 is to establish a standard for attacking the credibility of a hearsay declarant. Since the declarant’s out-of-court statements may be considered by the jury for the truth of their contents, the credibility of the declarant should be subject to impeachment as if the declarant had been called as a witness. (See, Notes of Advisory *605 Comm on Rules, 28 USC appendix, Fed Rules Evid, at 949; United States v Graham, 858 F2d 986, 990 [5th Cir 1988], cert denied — US —, 103 L Ed 201, 109 S Ct 1140 [1988].) While this is not an unlimited rule — the court must determine, for example, if the impeachment statements admitted into evidence (United States v Graham, 858 F2d 986, supra) — it is intended as an important balance to the admission of hearsay statements. (See, United States v Inadi, 475 US 387, supra.)
Relying on the principles set forth in Pavao (supra), Inadi (supra), and Federal rule 806, this court holds that fundamental fairness requires the admission of negative character evidence to impeach the character of a nontestifying witness whose hearsay statements have been admitted. In fact, the admission of such evidence is more compelling when the coconspirator is not called to the stand. Such a rule is a logical and minor extension of the principles set forth in Pavao, consistent with the aims of Federal rule 806, and apparently envisioned by the Inadi court as an appropriate balance to the admission of nontestifying coconspirator hearsay statements even if the coconspirator is available. (United States v Inadi, supra, at 397.)
For the reasons stated above, the defendant may present evidence of Andrew Sun’s negative character via witness testimony even though Andrew Sun is not being called as a witness.
III. NONDISCLOSURE OF WITNESS’ IDENTITY
The People have moved in limine for an order permitting them to call a witness to the stand, a confidential informant (hereinafter Cl), without disclosing the true name or address of the witness or any identifying information concerning him. While the People made such a motion in open court, permission was granted to continue the record in support of such motion in a sealed, ex parte proceeding. The court also interviewed the Cl personally on the record in camera and ex parte in order to "verify” the information provided by the People. The court then summarized in open court in as much detail as possible the reasons set forth by the People for such an extraordinary application.
In summary, the People informed the court that if the confidential informant were to testify under his true identity, his life would be in extreme danger not only because of his role in this case but also because of his current critical role in *606 an unconnected ongoing investigation. Disclosure of his identity would also result in the premature termination of that investigation, which is of great significance to law enforcement and the community. In reviewing the evidence presented, this court concluded that the People had set forth a compelling case for nondisclosure.
The defense claims that even where the People make a substantial showing of danger to a witness, allowing a witness to testify without revealing his or her identity deprives the defendant of his Sixth Amendment right of confrontation.
The issue presented to this court is whether a witness should be allowed to testify without disclosing his identity, where the People have made a compelling record to support their request for nondisclosure. After examining the specific facts presented and the relevant law, the court finds that in the situation here, nondisclosure of the witness’ identity is appropriate.
In discussing a defendant’s right of confrontation, the United States Supreme Court in Alford v United States (282 US 687 [1931]) reversed a defendant’s conviction because defense counsel at trial was prevented from inquiring into the address of a prosecution witness. While noting that: "questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examinatian”, the court held that asking the witness his address was an appropriate preliminary to the cross-examination and was an essential step in placing the witness in his environment. (Alford v United States, supra, at 688-689.)
Relying on Alford (supra), the Supreme Court in Smith v Illinois (390 US 129 [1968]) reversed a conviction of a defendant for narcotics sale where the defense was precluded from cross-examining the informant as to his actual name and address. In a concurring opinion in Smith, Justice White discussed the limit to cross-examination set forth by the Alford court and stated: "I would place in the same category those inquiries which tend to endanger the personal safety of the witness. But * * * the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question.” (Smith v Illinois, 390 US 129, 133-134, supra; emphasis added.)
The defense claims that Smith (supra) stands for the proposition that there can be no unidentified witness called by the People without a breach of the defendant’s constitutional *607 rights. However, the Smith case is clearly distinguishable from the instant case.
In Smith (supra), the informant whose identity was withheld was the principal prosecution witness and his testimony contradicted the defendant at critical points. In addition, the prosecution in Smith never advanced any reason, let alone any compelling reason, to support nondisclosure of the witness’ identity.
In contrast, in the instant case, the Cl is not the principal witness against the defendant. The principal evidence consisted of the recorded conversations of the coconspirator, Andrew Sun, and of the defendant, along with the testimony of Detective Robles, the principal prosecution witness, who met with the Cl and the defendant on numerous occasions during the course of the investigation. In addition, defense counsel has made an affirmative representation that the defendant will not testify here and thus no direct conflict between the Cl and the defendant will be presented as it was in Smith (supra). Finally, in the instant case, the People came forward with an overwhelming offer of proof concerning the danger to the life of this informant if his identity were disclosed and the risk of premature termination of an especially significant ongoing investigation. In Smith, the prosecution made no showing at all.
Following the reasoning set forth by the Supreme Court in Alford (supra) and Smith (supra), lower Federal courts have held that where the government makes a legitimate claim that a witness’ safety may be endangered by disclosure of identifying information, the trial court must balance the potential danger to the witness against the need of the defense for the information. (See, United States v Watson, 599 F2d 1149, 1157 [2d Cir 1979], revised opn 690 F2d 15 [2d Cir 1979], mod sub nom. United States v Muse, 633 F2d 1041 [2d Cir 1980 en banc], cert denied 450 US 984 [1981] [the occupation of a participant in a witness protection program concealed]; United States v Cavallaro, 553 F2d 300, 304 [2d Cir 1977] [address of a witness was not disclosed]; United States v Pérsico, 425 F2d 1375, 1383-1384 [2d Cir 1970] [witnesses need not disclose addresses or places of employment]; United States v Baker, 419 F2d 83, 87 [2d Cir 1969], cert denied 397 US 976 [1970] [witness’ refusal to disclose the name and address of his current employer upheld].)
This issue was also considered by the New York Court of *608 Appeals in People v Stanard (42 NY2d 74 [1977]). In that case, the Federal Government had relocated and provided new identities for two witnesses in a police corruption case. At trial, the prosecution was successful in preventing the defense from gaining any information or exploring any questions concerning the witnesses’ current names, occupations or locations. Concluding that no violation of the defendant’s Federal or State Sixth Amendment right to confrontation had occurred, the court held that the right to cross-examination is not unlimited. The Stanard court stated that once the objecting party comes forward with a showing of why the witness should be excused from answering the question — such as that the question would endanger the witness — the "burden then shifts to the questioning party to demonstrate the materiality of the requested information to the issue of guilt or innocence”. (People v Stanard, 42 NY2d 74, 84, supra.)
The Court of Appeals then proposed five nonexhaustive factors to be considered by a court in determining whether a questioning party has met this burden of showing materiality: (1) the extent to which the right to cross-examine is infringed; (2) the relevance of the testimony to the question of guilt or innocence; (3) the nature of the crime charged and the quantum of proof aside from this witness’ testimony; (4) the nature and significance of the witness’ claim; and (5) the extent to which the proposed cross-examination would result in significant evidence or be merely cumulative. (People v Stanard, 42 NY2d 74, 84, supra.)[3]
In the instant case, the defendant is charged with offering to sell to an undercover officer over two ounces of heroin as a "sample” to promote future multikilo heroin sales. The primary evidence against the defendant consists of his recorded conversations made pursuant to a wiretap, along with the recorded conversations and out-of-court statements of his al *609 leged coconspirator, Andrew Sun. In addition, the People have presented evidence of the defendant’s participation through the testimony of the undercover officer. The testimony of this witness will corroborate the evidence already adduced from the officer on direct and cross-examination. It is clear that the cross-examination of this undercover officer is critical to the jury’s deliberations in this case, and that the examination of the informant is less significant. In weighing the Stanard factors, this court finds that the impairment of the defendant’s right of confrontation can be minimized.
Where the People make an application for nondisclosure of a witness’ identity, this court will adopt the following two-step procedure. First, the court must conduct an ex parte, in camera, recorded fact-finding inquiry to determine the extent of the danger to the witness and the importance of any ongoing investigation and the extent to which such investigation would be jeopardized and to evaluate any other factors relied upon by the People in their application. If the court finds the danger to be substantial and, as here, the ongoing investigation to be of significance and in danger of premature termination, then the court will allow nondisclosure, but only after minimizing the effect of nondisclosure on the defense.
Second, the court must minimize the extent to which a defendant’s cross-examination will be infringed upon by nondisclosure by ordering the prosecution to investigate and disclose any past and present "bad acts” and criminal history of the witness. By directing the People to make this inquiry, and to turn over the results, the defense can be made as close to "whole” as possible. The resources of the People are often greater than those of the defense and the People may uncover significant impeachment material after a full and complete inquiry.
Applying the Stanard factors and those set forth under Federal law, the court directed the People in the instant case to inquire with the police, Drug Enforcement Administration (DEA) and related sources as to any prior bad acts of the Cl witness. Pursuant to this investigation, the People discovered and disclosed to defense counsel, in addition to the witness’ criminal history, a number of prior "bad acts” of the Cl, DEA intervention on behalf of the Cl in a previous arrest, and a breakdown of all funds received by the witness for his cooperation over the years. Thus, meaningful and extensive impeachment material was given to defense counsel and made available for cross-examination.
*610 This court has an obligation to guard zealously every defendant’s constitutional rights, which include his or her right to confront witnesses knowing who they are and having conducted his or her own investigation of them. However, if Smith (supra), Stanard (supra), and the other cases discussed have any meaning, there are limited recognized exceptions to this right as there are to every basic right. This case presents such an exception in this court’s opinion.
Ultimately, a court must balance the right of a defendant to confront a witness fully against the interest of the witness and the community in having the witness remain anonymous. In this case, the testimony to be provided by the informant will corroborate legally sufficient proof which has been adduced as to the existence of a conspiracy and the defendant’s role therein. While this testimony is relevant, it is certainly not critical in light of the wiretap evidence presented. Balancing these factors with the compelling reasons set forth by the People for nondisclosure, the People will be permitted to call the Cl as a witness without turning over his name or address or any identifying information to the defense.
It is unfortunate that reasons so compelling as to result in such an extraordinary ruling cannot be fully disclosed and must rest in a sealed record for appellate review. But 1989 in the world of narcotics is an extraordinary time, one likely to become far worse than better: ever escalating violence includes wanton killing of police officers as well as informants and danger premised on valid reasons cannot be dismissed. This court, as a Special Narcotics Court, has found it necessary to resort to the use of sealed records in increasingly varied circumstances (see, e.g., People v Seychel, 136 Misc 2d 310 [1987]) and the United States Supreme Court has recently reaffirmed its support of such a practice in a different context. (United States v Zolin, 491 US —, 109 S Ct 2619 [1989].)
This court has attempted to fashion a balance which will allow defendant Ryan Tai to exercise his constitutional right to cross-examine a witness by giving him sufficient impeachment material to place the witness in his proper setting and to test the weight of his testimony and credibility before the jury. Once this basic constitutional right has been met, the parameters of cross-examination are within the sound discretion of the Trial Judge.
For the reasons stated, the court finds that the defendant is not being denied his right of confrontation by the People’s nondisclosure of their witness’ identity.
*611 CONCLUSION
For the reasons discussed above, this court finds that the coconspirator statements of Andrew Sun are admissible against the defendant Ryan Tai, whether or not Sun is "available”; that the defense may call negative character witnesses to impeach Sun, even though he has not testified; and that the prosecution has set forth a compelling reason for nondisclosure of the identity of their confidential informant witness.

. If the witness is available, and is not called to the stand by the People, the People risk a "missing-witness” charge, depending on the nature of the witness’ testimony and whether he is in the People’s "control”. (People v Gonzalez, 68 NY2d 424 [1986].)

. Such as the use of coconspirator hearsay statements made after termination of a conspiracy, a deviation from the common-law rule. (Bourjaily v United States, 483 US 171,183.)

. The issue presented here is distinguishable from People v Goggins (34 NY2d 163 [1974]). In Goggins, the People did not call the confidential informant as a witness and the defense sought disclosure of his identity for possible use on its case. The court held that in a close factual contest (identification one year after two brief sales to the undercover), the critical factor is the relevance of the informant’s testimony to the guilt or innocence of the defendant. (People v Goggins, supra, at 170.) However, the defense must make an appropriate showing before disclosure will be ordered. In the instant case, the informant will be called as a witness by the People and the only issue is whether nondisclosure of his identity will impair the defendant’s right of cross-examination and confrontation guaranteed by the Constitution.