Gabrielli, J.
The defendant stands convicted of the crime of perjury in the first degree (Penal Law, § 210.15) following his retrial on an indictment which arose from testimony which he gave to a Grand Jury of Bronx County investigating police corruption in the Seventh Division. The conviction upon his first trial was reversed because prejudicial and excessive background testimony on police corruption generally was improperly received in evidence (32 NY2d 143).
The Appellate Division has unanimously affirmed this second conviction (52 AD2d 1098) and defendant advances several claims of error, but we are not persuaded that any of these claims warrant reversal, and we therefore affirm.
In June, 1968, the Grand Jury began an investigation of police corruption involving payments to police officials made by persons engaged in illegal policy and gambling activities, for the purpose of obtaining protection from arrest and prosecution. The investigation stemmed in part from information furnished by Patrolman Frank Serpico. The defendant, a New York City police officer at the time, was called as a witness and gave sworn testimony, under a grant of immunity, on two occasions in November, 1968. Among other matters, the defendant was queried about his attendance at a meeting with Patrolmen Andrew Taylor, James Paretti, William McAuliffe, and a known "policy” operator, Juan Carreras, at the Carr-eras residence, 1961 Lacombe Ave., Bronx, New York, on January 8, 1968. The People charge, inter alia, that the meeting was arranged by these officers for the purpose of assuring the continued collection of protection payments from Carreras. Defendant denied ever attending such a meeting and this denial was the basis for the first count of the indictment upon which he was convicted.
*78 The first count of the indictment charged defendant with falsely denying that he attended the meeting at the home of Carreras for the purpose of collecting protection money, and he asserts that a crucial element of the charge is the illegal purpose of the meeting. The thrust of his argument is twofold. First, he contends that there is insufficient proof of the charge in the indictment to sustain his conviction and, secondly, he urges that the illegal purpose element is necessary to show that the false swearing was material to the Grand Jury proceeding. Since materiality is a necessary element of first degree perjury (Penal Law, § 210.15) he thus maintains that the absence of an illegal purpose, as claimed by him, renders the false swearing harmless. We reject these arguments.
The indictment charged the defendant with denying under oath that he entered the Carreras home to collect protection money "or for any purpose whatsoever”.[1] Contrary to appellant’s assertion, the indictment also charges defendant with denying being on the specified premises for any purpose. During the Grand Jury investigation the following colloquy occurred:
"Q. * * * Were you ever present in any location but more specifically in a location at 1761 LaCombe Avenue, County of the Bronx, in a basement at that address present at that address aside from yourself in that basement were Ptl. McAuliffe, Paretti, Taylor and Juan Carreras?
"A. I was never present with Mr. Carreras and the patrolmen that you named.
"Q. Therefore you deny being present at that location with those people?
"A. No; I don’t.
"Q. At that location with those people?
"A. I deny ever being with those people, but it’s possible that I was at the location.
"Q. Well, if you were never with those people how could you *79 have been at that location with those people? The question is twofold.
"A. Well, it’s a twofold answer. I would say I was never at that location with those people.”
This and other Grand Jury testimony clearly demonstrates that defendant repeatedly denied being at the Carreras home with his fellow patrolmen, whether or not the purpose of the meeting was specified in the question. Juan Carreras testified that appellant attended the meeting and that protection payments were discussed along with certain operational problems of the "policy” business. Dolores Carreras corroborated the appellant’s identity, his presence at her home, the date, the place of the meeting, and the presence of the other three officers. Thus, there was sufficient evidence to find defendant guilty.
Section 210.50 of the Penal Law requires that proof of falsity in a perjury prosecution "may not be established by the uncorroborated testimony of a single witness.” The falsity of the statement made by appellant that he did not attend the meeting with his fellow officers was, as indicated, proven by the direct testimony of two witnesses and is thus sufficiently corroborated. Corroboration need not necessarily consist of direct evidence, however, but may be based on circumstantial evidence which furnishes partial proof of the falsity (People v Sabella, 35 NY2d 158, 168). Thus assuming arguendo that corroborative proof of the illegal nature of the meeting is necessary in this case, as defendant unsuccessfully insists, we believe it has nonetheless been established by adequate circumstantial evidence. Dolores Carreras testified that she had personally made protection payments to Officers McAuliffe and Paretti. These payments were usually made on the first day of each month but the Carrerases were unable to make the regular payment in January, 1968. On January 8 Officer McAuliffe telephoned the Carreras residence and Dolores told him that she and her husband had lost all their money in the policy business and would be unable to make any payment or continue their operations. The meeting at the Carreras home, attended by McAuliffe, Paretti and appellant, followed shortly after the officer’s telephone call on that same day. These facts, coupled with her identity testimony, permit the compelling inference and serve as sufficient proof that the purpose of the meeting was to discuss illegal payments. This independent evidence offered by Dolores Carreras fairly "tends to connect *80 the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [witness] is telling the truth” (People v Sabella, supra, p 169, quoting People v Dixon, 231 NY 111, 116) and is, therefore, sufficient circumstantial evidence to satisfy the corroboration requirement as to the illegal nature of the meeting (People v Sabella, supra; People v Doody, 172 NY 165, 172), and the conviction will not be overturned.
Perjury in the first degree also requires a false swearing which is "material to the action, proceeding or matter in which it is made” (Penal Law, §210.15). The appellant, as noted, may not prevail on his claim that there was an absence of proof of an illegal purpose for the meeting, and that his false denial of ever attending the meeting is thus immaterial to a Grand Jury investigation of police corruption. Materiality is an essential element of the crime of perjury in the first degree (see People v Teal, 196 NY 372, 376; People ex rel. Hegeman v Corrigan, 195 NY 1, 9; People v Courtney, 94 NY 490, 494; Wood v People, 59 NY 117, 121-122; cf. People v Ianniello, 36 NY2d 137, 143); false swearing, to be material, must reflect on the matter under consideration during the action or proceeding in which it is made. As stated in Wood v People (supra, p 123): "It is not necessary that the false statements should tend directly to prove the issue in order to sustain an indictment. If the matter falsely sworn to is circumstantially material or tends to support and give credit to the witness in respect to the main fact, it is perjury.” Under the facts in this case the appellant falsely denied, during a Grand Jury investigation into police corruption, that he met surreptitiously with three other police officers and a known gambler in the basement of the home of the gambler. Although evidence of the meeting would not by itself prove police corruption, the occurrence of the meeting, along with the other evidence in the case tends to support the existence of the corrupt nature and purpose of the meeting. Under these circumstances the false swearing must be deemed material, whether or not the illegal purpose is included as part of the charge.
Patrolman Serpico[2] had testified extensively during the first trial and it was his testimony of unrelated, illegal acts which *81 resulted in prejudice requiring reversal (32 NY2d 143, 145-146). Before the start of the second trial a hearing was held to determine whether the People had made a diligent, good faith effort to locate Patrolman Serpico, in order that any relevant portions of his testimony at the first trial might be admitted into evidence on the ground that he was now unavailable. From the totality of all the evidence the hearing court concluded that diligent efforts had been made by the District Attorney and the police, who were unable to locate Serpico and thus relevant parts of his prior testimony might be introduced into evidence. However, the District Attorney stated that the People had no intention of bringing up the name of Frank Serpico but sought to reserve the right to use his testimony only for cross-examination in the event that the defendant took the stand. Thus, the testimony was admissible as limited by the agreement of the District Attorney. As it developed, however, Serpico’s name was never mentioned during the course of the trial and none of the testimony was admitted or, indeed, relevant. Defense counsel had sought permission to voir dire the jurors concerning the impact of the potential use of Serpico’s testimony. The court denied the request stating that any mention of Serpico "will be excluded entirely from this trial”. The Judge added that each juror would be questioned whether he knows the defendant or has heard about the former trial and if any mention of Serpico occurs during this voir dire, the juror would be excused for cause.
Appellant also claimed that he had a constitutional right to query members of the venire on potential prejudice against appellant which might arise from the mention of Serpico’s name in conjunction with the People’s case. In claiming this right the appellant relies on Ham v South Carolina (409 US 524) in which the Supreme Court held that the due process clause of the Fourteenth Amendment required the Judge to interrogate the jurors upon the subject of racial prejudice. That inquiry rose to constitutional dimension since racial prejudice was directly involved. However, the court reaffirmed the traditionally broad discretion accorded a Trial Judge in conducting the voir dire (Ham v South Carolina, supra, p 528; Aldridge v United States, 283 US 308, 310) and rejected a similar request to inquire as to particular bias against beards on the ground that it did not reach the level of constitutional dimension.
*82 In this case the request to examine prospective jurors on Serpico was unquestionably within the discretion of the Trial Judge (CPL 270.15; People v Boulware, 29 NY2d 135). The proposed voir dire could well have encumbered the jury selection process for the sake of a matter which was clearly collateral in view of the District Attorney’s stipulation not to use Serpico’s testimony in the direct case. The Judge was scrupulously attempting to exclude all mention of Serpico in order to protect the defendant’s fair trial rights, and he assured counsel that any juror who spoke the name would be excused for cause. Under these circumstances we cannot say there has been an abuse of discretion (People v Boulware, supra, p 141). Appellant’s claim that his right to take the stand in his own behalf was impeded by the restriction on the examination of prospective jurors is totally unsupported and unavailing.
During the trial the People relied heavily on the testimony of two witnesses, Juan and Dolores Carreras. These witnesses were under the protection of Federal Marshals and, following the first trial, they had been relocated by the Federal Government for their safety, having been given new identities, addresses and occupations. Appellant sought to cross-examine these witnesses in all respects including their present names, addresses and occupations. The District Attorney asked that these newly created background matters not be raised in order to assure the safety of the witnesses. The trial court, after conducting a hearing outside the presence of the jury, found that the Carrerases had been provided new identities, addresses and occupations for the purpose of safeguarding their lives "from people who have an interest in taking [them]”, and granted the request to limit cross-examination. The court held, however, that the witnesses could be interrogated as to whether they were given new identities, why the change was made and whether the Federal Government financed their relocation. No restrictions were placed, of course, on cross-examination concerning matters prior to their relocation. In spite of this restriction, Juan and Dolores Carr-eras, after giving direct testimony at the second trial, were each subjected to thorough and extensive cross-examination involving their prior criminal activities and certain false swearing as well. No restriction, of course, was placed on the use of their testimony at the prior trial for purposes of cross- *83 examination. Only their present identities, occupation and location were not permitted to be explored.
Appellant insists, and erroneously we think, that his right to cross-examination as embraced in the Sixth Amendment right to confrontation was violated, relying on Alford v United States (282 US 687) and Smith v Illinois (390 US 129). In Alford the defense was prevented from obtaining the address of an important prosecution witness. The court noted that a principle purpose of cross-examination is to identify the witness with his community so that independent evidence of his reputation for veracity may be obtained (282 US, at p 691), and stated that "Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise [the facts]” (292 US, at p 692). But the court admonished that the right is not absolute and ruled that there is a duty to protect a witness "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him” (282 US, at p 694).
In Smith, a conviction was reversed because the defense was denied the right to cross-examine a crucial prosecution witness, testifying under a false name and address, as to his true identity. In a concurring opinion Mr. Justice White stated (pp 133-134): "In Alford v. United States, 282 U. S. 687, 694 (1931), the Court recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination. I would place in the same category those inquiries which tend to endanger the personal safety of the witness. But in these situations, if the question asked is one that is normally permissible, the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question. The trial judge can then ascertain the interest of the defendant in the answer and exercise an informed discretion in making his ruling”. In both Alford and Smith there was no showing of any interest of the State or the witness that would justify restriction of cross-examination. The case before us presents a far different situation.
Although there is a right to cross-examine, it is not unlimited (Smith v Illinois, supra; Alford v United States, supra; United States v Varelli, 407 F2d 735, 750, 452 F2d 193, cert den 405 US 1040). Where the defense seeks to question a *84 prosecution witness about his identity, address and occupation, such questions must be permitted absent a showing that a cognizably valid interest of the State or the witness is involved. Where the question on cross-examination is one that is normally permissible under the rules of evidence, the objecting party must come forward with some showing of why the witness should be excused from answering the question. Excuse may arise from a showing that the question will harass, annoy, humiliate or endanger the witness. The burden then shifts to the questioning party to demonstrate the materiality of the requested information to the issue of guilt or innocence (see United States v Varelli, supra; United States v Rich, 262 F2d 415; United States v Baker, 419 F2d 83, 87, cert den 397 US 971). The court must then, in the exercise of discretion, weigh the various interests involved and determine whether the testimony is sufficiently material to the question of guilt or innocence to overcome the interest of the opposing party. In determining materiality the court is required to keep in mind that the underlying purpose of identity testimony is to establish a background setting in which to test veracity (United States v Smaldone, 484 F2d 311, 381 cert den 415 US 915; United States v Alston, 460 F2d 48, 51, cert den 409 US 871). Although not exhaustive, the following factors may be considered by the court in determining whether the defendant has met his burden of showing materiality: (1) the extent to which the right to cross-examine is infringed, (2) the relevance of the testimony to the question of guilt or innocence, (3) the nature of the crime charged and the quantum of proof established aside from the testimony of the witness, (4) the nature and significance of the interest or the right asserted by the witness, and (5) the nature of and extent to which the proposed cross-examination would produce evidence favorable to that party and, of course, whether such evidence would be merely cumulative. In reaching a final determination, after a hearing to gather the relevant facts, the court must engage in a balancing process which compares the rights of the defendant to cross-examination, considering the extent to which this right is infringed, with the interest of the witness in retaining some degree of anonymity.
In the present case the restriction on cross-examination was imposed out of fear for the personal safety of the witnesses. This was a sufficient interest to shift the burden of proving necessity and materiality to the defendant (see United States *85 v Rangel, 534 F2d 147,148, cert den 429 US 854; United States v Persico, 425 F2d 1375, 1384, cert den 400 US 869), and the defendant failed to sustain his burden of proving necessity and materiality. The right to cross-examination was only partially restricted in that the identity, address and occupation of the witnesses prior to relocation was fully available. The criminal past of the witnesses was carefully probed by defense counsel and the District Attorney provided defense with the arrest record of the witnesses up to the month before trial. Indeed, the District Attorney made known to the court and defense counsel that he had requested the United States Marshal (Henry Johnson) to investigate whether the Carrerases had been arrested under their new names. Given the extensive and damaging material already available to attack the credibility of the witnesses, the limitation in this case was negligible and justified. Although the prosecution relied heavily on the testimony of the Carrerases, their interest in personal safety was significant and the extent of infringement slight. In addition there was no showing of the relevance of the testimony to the issue of guilt or innocence. Under these circumstances, the interest of the witness in assuring his personal safety outweighs the defendant’s interest in cross-examination on these narrow matters and, consequently, we cannot say that the trial court abused its discretion in restricting cross-examination.
During the course of the trial defendant sought his personnel file from the police department. Although his demands were initially thwarted, the court eventually ordered release of the file. After perusing the file defendant’s counsel claimed that the prosecution had suppressed evidence by removing all relevant information prior to release. There can be no doubt that the People have a duty to disclose exculpatory information under their control (Giglio v United States, 405 US 150, 153-154; Brady v Maryland, 373 US 83, 87; People v Simmons, 36 NY2d 126, 131) whether the nondisclosure is intentional or negligent (People v Simmons, supra). No facts were presented, however, to advise or inform the court what was missing from the file and how it might be exculpatory or to support in any way the charge of suppressing evidence. Under these circumstances the defendant has shown insufficient facts to raise any issue whether the prosecutor or the police suppressed portions of the file.
*86 The appellant’s other allegations of error have been duly considered by the court and found to be without merit.
Accordingly, the order of the Appellate Division should be affirmed.

. The indictment charged that: "The defendant did then and there testify before said Grand Jury under oath * * * that he, the said defendant, did not enter and remain at 1761 Lacombe Ave, Bronx, New York, the home of Juan Carreras and Dolores Carreras, with Patrolman Andrew Taylor, Patrolman James Paretti, and Patrolman William P. McAuliffe, on or about January 8, 1968, or at any other time for the purpose of collecting money due defendant and his fellow patrolmen for protecting Juan Carreras’ Mutuel Race Horse Policy Business, or for any purpose whatsoever”.

. Serpico’s efforts at exposing police corruption were the subject of a book and movie. He became a well-known "superhero” and thus mention of his name and exploits in a trial such as this might possibly result in prejudice to the defendant.