■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAYMOND KIRCHHOFF, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered August 11, 1977, convicting him of perjury in the first degree, upon a jury verdict, and imposing sentence. Judgment affirmed and case remitted to the County Court, Nassau County, for further proceedings pursuant to CPL 460.50 (subd 5). As part of an investigation of various criminal activities at the Pride Lincoln-Mercury dealership in Wantagh, Long Island, where defendant was employed, two female undercover officers offered to supply defendant with drivers' licenses from the Department of Motor Vehicles at $150 per license. In July, 1975, at defendant's behest, one of those two officers delivered to defendant a license in the name of Frank Gelormini, who was another employee of the dealership. When asked what he intended to do with the licenses he purchased, defendant told the officer that drivers' licenses could be used as identification to buy or rent, with a small deposit, large equipment which could then be stolen. Defendant procured five additional dirvers' licenses from the undercover officers. His conversations with them were recorded. In October, 1975 defendant was subpoenaed to appear before a Special Grand Jury investigating, *inter alia,* forgery, criminal possession of forged instruments, criminal possession of stolen property, falsifying business records and conspiracy to commit those crimes, at the Pride Lincoln-Mercury dealership. When defendant appeared before the Grand Jury on January 16, 1976, he was asked about his procurement of drivers' licenses from the female undercover officers. On that occasion defendant positively denied that he ordered a license for Frank Gelormini. That testimony is the basis of his conviction for perjury. When defendant appeared before the Grand Jury on February 6, 1976, he was asked again about the Gelormini license and testified as follows: "Question: Specifically, sir, on July 8, 1975, isn't it a fact that you asked these two girls to obtain for you a license in the name of Frank Gelormini? Answer: I don't know for a fact. I don't remember what I asked them. I just remember what they brought me. Question: Sir, did they ever bring you a license in the name of Frank Gelormini? Answer: No." The evidence clearly establishes that defendant gave false testimony with respect to a matter material to the investigation (see *People v Stanard,* 42 NY2d 74, 80, cert den 434 US 986). Defendant claims that the prosecutor's questions were designed to trap him into perjury, rather than to elicit facts material to the investigation. As evidence of the prosecutor's bad faith, defendant notes that the prosecutor did not show him transcripts of his conversations with the undercover officers to "refresh" his recollection. However, the prosecutor was not obligated to confront defendant with recordings of his conversations "lest he conform his testimony to what was already known" (see *People v Pomerantz,* 46 NY2d 240, 249). Defendant's allegations of prosecutorial bad faith and abuse of Grand Jury process are totally unsupported by the record (see *People v Pomerantz, supra; People v Tyler,* 46 NY2d 251). Based upon his claim that the prosecutor's questions

were designed *only* to test his truthfulness, defendant requested that the court charge the jury as to the prosecutor's motives. The court properly refused to give such a charge. *People v Tyler (supra,* p 259) intimates that there may be some situations where defendant's guilt of each and every element of the crime is established, but the prosecution is nonetheless invalid because of improper prosecutorial motives. However, such questions should be addressed to the court and not to the jury (see *People v Isaacson,* 44 NY2d 511, 524-525; *People v Goodman,* 31 NY2d 262), lest "unmanageable subjectivity" be injected into criminal trials *(People v Isaacson, supra,* p 524). The court properly rejected defendant's claim that the prosecutor's motives were improper and adequately instructed the jury with respect to the element of materiality (see *People v Stanard,* 42 NY2d 74, 80, *supra;* cf. *People v Tyler, supra).* Finally, we note that the trial court properly refused to submit the affirmative defense of retraction to the jury. In his testimony of February 6, 1976, defendant did not retract his false testimony of January 16, 1976, but merely reaffirmed that testimony (cf. *People v Ezaugi,* 2 NY2d 439). We have considered the other issues raised by defendant and find them to be without merit. Suozzi, J. P., Lazer, Gulotta, Shapiro and Cohalan, JJ., concur.