OPINION OF THE COURT
Judith Sheindlin, J.
In a juvenile delinquency proceeding pursuant to Family Court Act article 3 the presentment agency (petitioner) seeks a pretrial ruling, limiting the cross-examination of an eyewitness.
*533 The respondent is accused of acts which if committed by an adult would constitute the crimes of criminal sale of a controlled substance in the third degree and criminal facilitation in the fourth degree. It is alleged that respondent was aiding another in the illegal sale of narcotics to a civilian. Said activity was observed by police from an apartment inside a housing project.
Petitioner does not seek to protect the identity of a specific witness. Rather, the exact location of the observation post is sought to be withheld on the grounds that revealing said location might endanger certain individuals. Respondent asserts that refusal to disclose the observation post would violáte his right to effective cross-examination.
"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him” (US Const 6th Amend). It is well established that the Sixth Amendment right to confrontation affords two types of protection: the right to face those testifying at trial and the right to cross-examine them. (See, California v Green, 399 US 149 [1970]; Pennsylvania v Ritchie, 480 US 39 [1987].)
The right to cross-examine, however, is not absolute and courts have seen fit to limit it in certain situations. The United States Supreme Court has held that there is a duty to protect a witness, "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him.” (Alford v United States, 282 US 687, 694 [1931].) In a concurring opinion in Smith v Illinois (390 US 129, 133-134 [1968]), Justice White stated: "I would place in the same category those inquiries which tend to endanger the personal safety of the witness.”
The Court of Appeals in People v Stanard (42 NY2d 74 [1977]) upheld restrictions on questions relevant to the current identity of witnesses who had been relocated by the Federal Government. In dealing with the issue of when proper cross-examination may be limited the court stated: "Where the question on cross-examination is one that is normally permissible under the rules of evidence, the objecting party must come forward with some showing of why the witness should be excused from answering the question. Excuse may arise from a showing that the question will harass, annoy, humiliate or endanger the witness. The burden then shifts to the questioning party to demonstrate the materiality of the requested information to the issue of guilt or innocence * * *. The court *534 must then, in the exercise of discretion, weigh the various interests involved and determine whether the testimony is sufficiently material to the question of guilt or innocence to overcome the interest of the opposing party. In determining materiality the court is required to keep in mind that the underlying purpose of identity testimony is to establish a background setting in which to test veracity * * *. Although not exhaustive, the following factors may be considered by the court in determining whether the defendant has met his burden of showing materiality: (1) the extent to which the right to cross-examine is infringed, (2) the relevance of the testimony to the question of guilt or innocence, (3) the nature of the crime charged and the quantum of proof established aside from the testimony of the witness, (4) the nature and significance of the interest or the right asserted by the witness, and (5) the nature of and extent to which the proposed cross-examination would produce evidence favorable to that party and, of course, whether such evidence would be merely cumulative. In reaching a final determination, after a hearing to gather the relevant facts, the court must engage in a balancing process which compares the rights of the defendant to cross-examination, considering the extent to which this right is infringed, with the interest of the witness in retaining some degree of anonymity.” (People v Stanard, supra, at 84.)
The difficulty with the request now before this court is that the material sought to be withheld is not only proper cross-examination but goes directly to the question of innocence or guilt, unlike the situation in People v Stanard (supra).
Absent clear authority, petitioner seeks to draw similarities to cases like Stanard (supra), where various rights have given way to concerns for safety. The right to a public trial is curtailed in certain situations involving undercover officers. (See, People v Jones, 47 NY2d 409 [1979]; People v Tinsley, 145 AD2d 448 [2d Dept 1988].) The government is permitted to withhold the identity of confidential informants under certain circumstances. (See, McCray v Illinois, 386 US 300 [1967]; Roviaro v United States, 353 US 53 [1957]; People v Darden, 34 NY2d 177 [1974]; People v Goggins, 34 NY2d 163 [1974].)
Indeed, the closest case cited by petitioner in support of its request is United States v Harley (682 F2d 1018 [1982]), where a Federal court specifically adopted a surveillance location privilege at trial. The defendant was accused of selling drugs to an undercover officer. The sale was observed from a surveillance post by other officers.
*535 The court viewed the key issue at trial as one of identification. As the undercover officer was face to face with the defendant the testimony of the other officers was considered merely corroborative. In addition, the actual view from the surveillance post was preserved on videotape.
In balancing the relevant factors the court stressed that: "Whether or not use of this particular surveillance post has been abandoned * * * so that the safety of the police officers using it is not involved, the safety of the cooperating apartment owner or tenant remains a relevant consideration as does the willingness of other citizens to cooperate with the police in this fashion in the future. These * * * are weighty considerations supporting the privilege.” (United States v Harley, supra, at 1020.)
Perhaps there are situations where such a privilege would be consistent with New York law. However, the matter now before this court is not such a case.
In its zeal to construct new principles the petitioner has chosen weak scaffolding. Under the guidelines set forth in People v Stanard (supra), the facts of this case do not merit the withholding of material information on cross-examination.
Here, as the only eyewitness was inside the observation post the right to cross-examine would be seriously infringed. The testimony is highly relevant to the question of guilt or innocence and the evidence is significant not merely cumulative. Absent the location of the observation post the respondent cannot test the recall of the officer nor investigate the scene to seek out inconsistencies in testimony.
Moreover, petitioner has failed to come forward with a compelling reason for nondisclosure. The record of the hearing (substantial parts held in camera and therefore not detailed here) reveals that the request is based solely on the officer’s conclusion that revealing the post might endanger the lives of certain nonwitnesses. The testimony presented fails to establish a nexus between exposure of the location itself and danger to individuals. Furthermore, when asked at the hearing who had the final say on whether the location of the observation post should be revealed, one of the officers indicated that his captain had left the decision up to him.
It is difficult to accept that disclosure of the post alone might endanger the safety of certain people, when the officer’s *536 superiors are indifferent to the question of disclosure. Given this record the court finds that the petitioner has failed to meet its burden and has shown no compelling reason to withhold relevant and significant evidence.
Accordingly, petitioner’s application is denied in its entirety.