OPINION OF THE COURT
Alma Cordova, J.
Respondent brings this order to show cause seeking orders (i) directing the Presentment Agency to disclose the exact location of the observation post from which the officer allegedly observed the respondent selling cocaine, (ii) suppressing the out-of-court identification, (iii) requiring the production of the high-powered binoculars used by the police officer during his observation, and (iv) directing compliance of discovery and bill of particulars.
Respondent in this juvenile delinquency proceeding filed February 28, 1997 is alleged to have committed acts which if committed by an adult would constitute the crimes of criminal sale of a controlled substance, criminal possession of a controlled substance and criminal trespass, inter alia. On March 3, 1997, after a probable cause hearing, the matter was adjourned to March 13, 1997 for fact finding. On March 11, 1997 respondent filed this order to show cause, returnable. March 13, 1997.
Respondent asserts that curtailment of his constitutional right to cross-examine creates a serious infringement of his right to confrontation. Without disclosure, respondent states, he is not able to test the recollection of the officer nor investigate the scene to seek out inconsistencies in his testimony.
Presentment Agency submits that the observation post is currently .used on a regular basis by members of the Street Narcotics Enforcement Unit (SNEU) to observe narcotic sales in this drug-prone area. Not only is the SNEU team adamantly opposed to the disclosure of this location, but the team has been ordered by its commanding sergeant not to disclose such information. Presentment Agency adds that since the observation post is actively used by SNEU, disclosure of the site would jeopardize the safety of the police officers involved in the area and would likely destroy the future value of that location for police surveillance. Additionally, disclosure would pose a serious risk of danger to the cooperative owners who gave permission to police to use their cooperative and to the residents of the community. These sellers and buyers of drugs might resort to retaliation and violence if the cooperative owners’ address *418 became known. Likewise, the Presentment Agency submits that the assurance of nondisclosure of an observation post is necessary to encourage private property owners and occupants to allow the police to make further use of their property for police investigations. If citizens knew that a defendant charged with an offense can learn the exact surveillance location many will not permit use of their property to combat the serious drug problem.
THE LAW
Unquestionably, the Sixth Amendment requires that "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him”. (US Const 6th Amend.) This Amendment offers the respondent two types of protection: first, the right to be face-to-face with the individuals who testify against him, and second, the right to cross-examine those who testify. (See, California v Green, 399 US 149 [1970]; Pennsylvania v Ritchie, 480 US 39 [1987].)
However, the right to cross-examine has been qualified in a number of situations. In Alford v United States (282 US 687, 694 [1931]), the United States Supreme Court held that a witness must be protected "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him.” In Smith v Illinois (390 US 129, 133-134 [1968]), Justice White added an additional caveat in his concurring opinion: "I would place in the same category those inquiries which tend to endanger the personal safety of the witness.”
In New York, the Court of Appeals addressed this issue at length in People v Stanard (42 NY2d 74, 83-84 [1977]) holding: "Although there is a right to cross-examine, it is not unlimited [citations omitted]. Where the defense seeks to question a prosecution witness about his identity, address and occupation, such questions must be permitted absent a showing that a cognizably valid interest of the State or the witness is involved. Where the question on cross-examination is one that is normally permissible under the rules of evidence, the objecting party must come forward with some showing of why the witness should be excused from answering the question. Excuse may arise from a showing that the question will harass, annoy, humiliate or endanger the witness. The burden then shifts to the questioning party to demonstrate the materiality of the requested information to the issue of guilt or innocence [citations omitted]. The court must then, in the exercise of discretion, weigh the various interests involved and determine *419 whether the testimony is sufficiently material to the question of guilt or innocence to overcome the interest of the opposing party. In determining materiality the court is required to keep in mind that the underlying purpose of identity testimony is to establish a background setting in which to test veracity [citations omitted]. Although not exhaustive, the following factors may be considered by the court in determining whether the defendant has met his burden of showing materiality: (1) the extent to which the right to cross-examine is infringed, (2) the relevance of the testimony to the question of guilt or innocence, (3) the nature of the crime charged and the quantum of proof established aside from the testimony of the witness, (4) the nature and significance of the interest or the right asserted by the witness, and (5) the nature of and extent to which the proposed cross-examination would produce evidence favorable to that party and, of course, whether such evidence would be merely cumulative. In reaching a final determination, after a hearing to gather the relevant facts, the court must engage in a balancing process which compares the rights of the defendant to cross-examination, considering the extent to which this right is infringed, with the interest of the witness in retaining some degree of anonymity.”
Following the guidelines outlined in Stanard (supra), the court finds that the Presentment Agency has come forward with compelling reasons for failing to disclose the location of the observation post. The court also finds that respondent has met his burden of showing materiality in that as the only eyewitness at the observation post the right to cross-examine the police officer would be seriously infringed, and, that the material sought to be withheld is relevant to the guilt or innocence of the respondent. Once the court determines that the requested material is relevant, it must then balance the respondent’s interest in disclosure with the witnesses’ or State’s interest in nondisclosure. (People v Stanard, supra.)
There is a dearth of case law at the appellate level balancing the need to restrict information about observation posts against the right of a defendant or respondent to cross-examine. The District of Columbia Court of Appeals, in Hicks v United States (431 A2d 18 [DC 1981]), first recognized the privilege. The court upheld the trial court’s refusal to allow defense cross-examination about the precise surveillance post from which the police had observed drug transactions. The United States Court of Appeals, District of Columbia Circuit, later approved and extended the privilege to suppression hearings in United *420 States v Green (670 F2d 1148 [1981]), and to trials in United States v Harley (682 F2d 1018, 1020 [DC Cir 1982]) in which it said, "We now hold that the surveillance location privilege, like the informer’s privilege, applies at trials and that it, too, is to be applied through a balancing test controlled by 'the fundamental requirements of fairness.’ ” (See also, State v Garcia, 131 NJ 67, 618 A2d 326 [1993].)
This court has reviewed two Family Court cases with contrasting opinions. In Matter of James B. (146 Misc 2d 532, 535 [Fam Ct 1990]), the court, after applying Stanard (supra), permitted disclosure holding, "[t]he testimony presented fails to establish a nexus between exposure of the location itself and danger to individuals. Furthermore, when asked at the hearing who had the final say on whether the location of the observation post should be revealed, one of the officers indicated that his captain had left the decision up to him.” The court went on to say, "[i]t is difficult to accept that disclosure of the post alone might endanger the safety of certain people, when the officer’s superiors are indifferent to the question of disclosure” (at 535-536). Also in People v Broadnax (NYLJ, Aug. 18, 1993, at 24, cols 4, 5 [Crim Ct, Queens County]) the court, permitting disclosure, held that "[t]he People have not demonstrated a danger to the witness’ life but rely on residual problems of law enforcement, of which there is not even an offer of proof.” But, in Matter of Rodriguez, an unpublished decision rendered on November 13, 1996, in Bronx Family Court, the court held that disclosure would endanger a person’s life since the observation post was in a citizen’s apartment only a few blocks from where respondent lived.
The instant case is distinguishable from James B. (supra) and People v Broadnax (supra), in which no concerns for the safety of private citizens were raised. It is clear in this case, after engaging in a balancing process, that a cognizably valid interest of the State or the witness is involved in not disclosing the precise location of this observation post. Here, the cooperative owners and tenants who gave their permission will be protected from any reprisals. Also, these owners will be encouraged to continue cooperating with the police to effectively assist in combatting this drug problem.
However, in order that the respondent can conduct an effective cross-examination at trial, the court will allow the respondent to inquire as follows: the distance from which the observation was made; whether the officer used additional vision-enhancing articles besides the binoculars; whether the officer *421 observed the alleged crime from an elevated position; the officer’s angle of sight and field of vision; whether there were other people in the immediate area; whether there were any other buildings in the area of comparable size; the position of the sun at the time of the observation (see, State v Garcia, supra); and whether she saw the activity across a crowded roadway or a vacant lot. The respondent may not inquire into the building address. The court believes that this balance should preserve respondent’s right to cross-examination while also preserving the safety of the cooperative owners.
Regarding the suppression of identification, respondent’s request is denied. Police Officer Trotta testified at the probable cause hearing that she has been a police officer for five years and is currently working in the narcotics unit. On February 21, 1997, at approximately 12 noon, she observed the respondent in front of 1141 Elder Avenue from a distance of about 50 to 100 feet, on approximately four different occasions, within a period of a half hour, exchange small objects for United States currency with approximately four buyers of narcotics — two of whom were apprehended. Officer Trotta radioed her back-up team who arrested the respondent. She arrived at the arresting location at approximately 12:30 p.m. Forty-one orange top vials of crack cocaine were recovered from underneath the staircase in the lobby of 1141 Elder Avenue and additional vials were recovered from the other defendants.
The court finds that the procedures followed by the officer in arresting the respondent did not constitute an identification but rather were a confirmatory viewing of the respondent by the observing officer approximately one-half hour after the alleged sale of the controlled substance. (People v Wharton, 74 NY2d 921 [1989]; People v Morales, 37 NY2d 262 [1975]; People v Leftwich, 82 Misc 2d 993 [Sup Ct, NY County 1975].)
Regarding the production of the binoculars, the Presentment Agency has agreed to turn over the high-powered binoculars used by the surveilling officer.
Regarding discovery, the court finds that the information sought is Rosario material. At the commencement of the fact-finding the Presentment Agency shall make available to respondent all Rosario material. (Family Ct Act § 331.4.)
Respondent’s request to file additional motions is denied without prejudice. (Family Ct Act § 332.2 [2].)