811 A.2d 898

**Terrance JOHNSON**

v.

**STATE of Maryland.**

**No. 2785, Sept. Term 2001.**

Court of Special Appeals of Maryland.

Dec. 4, 2002.

Claudia A. Cortese, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Steven L. Holcomb, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for appellee.

Argued before HOLLANDER, SALMON, and JAMES R. EYLER, JJ.

JAMES R. EYLER, Judge.

Terrence Johnson, appellant, was convicted of distribution of cocaine after a jury trial in the Circuit Court for Baltimore City. The jury acquitted appellant of possession of cocaine and possession with intent to distribute cocaine. Appellant alleges the trial court erred in granting the State's motion in limine, which allowed the State not to disclose the covert location from which a police officer observed appellant in a drug transaction. We perceive no error and affirm the trial court's ruling on the motion.

### Factual Background

On the evening of September 10, 1999, Baltimore City Police Officer Eric Johnson was in a covert location in the

2000 block of North Forest Park Avenue in Baltimore City. Officer Johnson testified that he saw a man, later identified as appellant, located approximately 75 feet away, "loitering" at a gas station. Appellant was approached by a man in a red truck, later identified as John Milburn, and the two spoke briefly. Appellant made a hand gesture to an unidentified man across the street, who ran to the gas station and handed a small package to appellant. The unidentified man quickly left. Appellant accepted cash from Milburn before handing him the same package. Milburn then drove off in the truck.

After seeing these events, Officer Johnson believed he had just witnessed a drug deal. He radioed the license plate of the truck and a description of appellant to other officers, who subsequently arrested appellant and the truck driver. Officer Johnson stated that he did not get a good look at the unidentified man, who ran across the street. Thus, he did not give a description of him, and he was not apprehended. A search incident to arrest revealed that appellant had twenty-one dollars in his possession. On the floor of Milburn's red truck were two ziplocked baggies of white material, later identified as cocaine.

Before appellant's trial, the State filed a motion *in limine* to prevent the disclosure of the covert location from which Officer Johnson observed the events. At the hearing on the motion, after the State made a proffer, the trial court ruled that the proffer was not a sufficient basis on which to grant the motion. The State then called Officer Johnson to testify out of the presence of the jury.

Johnson testified that he observed the transaction in question from an undisclosed building in the 2000 block of North Forest Park Avenue, near the intersection with Windsor Mill Road. The block included three businesses, three or four apartments, four or five houses, a park, a church, a gas station, and a liquor store. Officer Johnson testified that he did not want to disclose the location because "right now there are more operations dealing with that covert location. Okay. This location, if I would disclose this location, it would endan-

ger persons. And another thing, if I would disclose the information of this location, then that would damage other cases that are being worked on." In response to a question from the court, Officer Johnson testified "because the defendant knows that I have arrested many people in that area that he is associated with, and these people, once they find out, they have said that once they find out where I am, then some action will be taken."

Officer Johnson had obtained permission to use the covert location by agreeing not to disclose it. The person or persons who gave permission expressed the fear that their lives or property would be in danger if the location were known. The trial court ruled that the covert location should not be disclosed, expressly indicating that the primary basis for its ruling was to protect the person or persons who consented to use of the covert location. The court also indicated, however, that Officer Johnson would be subject to extensive cross-examination.

At trial, Officer Johnson testified to essentially the same information as presented at the motion hearing. He described the use of covert locations and stated that he had observed street level activities from covert locations over 200 times. Officer Johnson described the activities involving appellant, stating that he had a clear, unobstructed view from his location.

On cross-examination, the following information was elicited. Officer Johnson testified that he was on the corner of Forest Park and Windsor Mill Roads. He was inside a building, ten feet above ground level. He did not have to look through glass or a "plastic coating". He testified that he was looking out of a doorway, and he described the buildings and portions of the roadways that he could see from his vantage point. We will comment on additional portions of his testimony below.

### Discussion

Appellant contends it was error to grant the motion *in limine*, thereby preventing full disclosure of the location used

by Officer Johnson. Appellant claims he could not prepare an adequate defense without knowing the exact location from which the police officer observed the events. Appellant explains that the lighting, vantage point, and obstructions, if any, would be apparent only if the State divulged the exact covert location. The State contends that it was within the trial court's discretion to deny disclosure of the location. The State further contends that appellant was able to adequately cross-examine the officer, and therefore, no prejudice resulted.

■ This is a case of first impression in Maryland. Courts in other states and federal courts have addressed this question, however, and they appear to be in agreement that there is a qualified privilege not to disclose a covert surveillance location, analogous to an informer's privilege. Disclosure depends upon the particular circumstances of each case and is determined by balancing the public's interest in non-disclosure against a defendant's interest in cross-examination and accurate fact finding. *See, e.g., Haider v. Director of Corrections,* 992 F.Supp. 1192, 1196–97 (9th Cir.1998); *United States v. Van Horn,* 789 F.2d 1492, 1507–08 (11th Cir.1986); *United States v. Smith,* 780 F.2d 1102, 1108 (4th cir.1985); *McKillop v. Regents Of Univ. of California,* 386 F.Supp. 1270, 1275 (N.D.Cal.1975) (recognizing the necessity of a case-by-case balancing approach); *State v. Moss,* 648 So.2d 206, 207 (Fla. Dist.Ct.App.1994); *People v. Knight,* 323 Ill.App.3d 1117, 257 Ill.Dec. 213, 753 N.E.2d 408, 413 (2001); *In re Chris C.,* 172 Misc.2d 416, 658 N.Y.S.2d 929, 932 (1997); *Commonwealth v. Lugo,* 406 Mass. 565, 548 N.E.2d 1263, 1265 (1990); *State v. Williams,* 239 N.J.Super. 620, 571 A.2d 1358, 1361, 1364–65 (1990); *State v. Parsons,* 64 Ohio App.3d 63, 580 N.E.2d 800, 803 (1989); *Commonwealth v. Jennings,* 428 Pa.Super. 297, 630 A.2d 1257, 1261 (1993); *Hollins v. Commonwealth,* 19 Va.App. 223, 450 S.E.2d 397, 399 (1994).

The approach generally followed with respect to the issue before us was set forth in *United States v. Green,* 670 F.2d 1148, 1156 (D.C.Cir.1981), a case frequently cited and, in this case, relied upon by both parties. *Green* involved testimony

at a suppression hearing, but *United States v. Harley*, 682 F.2d 1018, 1020–21 (D.C.Cir.1982) extended the principles in *Green* to trial testimony. *Accord United States v. Foster*, 986 F.2d 541, 543 (D.C.Cir.1993).

The facts in *Green* are nearly identical to those in the case before us. In *Green*, a D.C. police officer was stationed at an undisclosed location in a known drug trafficking area. *Green*, 670 F.2d at 1150. The officer saw what he believed to be a "two-party drug transaction" where one "receives the money from a customer, carries it to the individual holding the drugs, and returns the purchased drugs to the customer." *Id.* at 1151, n. 1. Based on what he saw from his hidden surveillance, the officer radioed a description of the people involved to other officers who made the arrest. *Id.* at 1151.

Similarly, in the case *sub judice*, the surveillance officer testified that often teams of people sell drugs, explaining "one person deals with collecting the money and passing the drugs, and the other person works at either protecting the drugs or watching out for the police." Appellant and the unidentified man comprised the two-party team in this case, transacting business with a customer, Milburn. After seeing the transaction, the surveillance officer radioed a description of the men involved to the arresting officers.

The Court in *Green* analogized the disclosure of a covert surveillance location to issues involving the anonymity of government informants, concluding that the policy considerations protecting informants exist in undisclosed location cases. *Id.* at 1154–55. The *Green* Court relied upon *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), in which the Supreme Court held that "the trial court may require disclosure . . . [if the information sought] is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60, 61, 77 S.Ct. 623.

The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper

balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id.* at 62, 77 S.Ct. 623.

The *Green* court concluded that both secret informants and secret locations are helpful only if they remain undisclosed. *Id.* at 1155. Revealing the hidden location (or unnamed informer) may jeopardize the safety of officers or citizens and discourage further public cooperation with the police. *Id.* at 1155. These similarities persuaded the *Green* court to recognize a qualified "surveillance location privilege." *Id.*

After recognizing the existence of the privilege, the *Green* court balanced the state's privilege not to disclose against the accused's general right to cross-examination. *Id.* at 1154 (citing *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973)). "In exercising its discretion, a trial court should endeavor to protect the public interests that give rise to the surveillance location privilege, while also taking any steps necessary to ensure accurate fact-finding and to protect the defendant's Fourth Amendment rights." *Id.* at 1156; *accord Marshall v. State,* 346 Md. 186, 192, 695 A.2d 184 (1997) (recognizing an accused's right to cross examination); *see also Smallwood v. State,* 320 Md. 300, 307, 577 A.2d 356 (1990) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) for the proposition that trial judges have discretion to limit cross-examination for safety concerns).

In performing the balancing test, the *Green* court stated that "the location of a police observation post may establish whether the observing officer's view was open or obstructed, whether the angle of the officer's view made the observations easy or difficult, and whether the distance from the criminal activity enhances or detracts from an officer's claimed observation of detail." The trial court must decide if factors such

as obstructions, angle, and distance can be elicited on cross-examination without revealing the exact surveillance location.

Although Green claimed that the exact movements of the alleged drugs, from hand to hand, could not be seen fully by the surveillance officer, the court concluded that "Green succeeded in establishing the limits of the police officers' observations without learning the exact location of their observation post." *Id.* The court reasoned that the cross-examination was adequate because the officer's distance to the transaction, his height from the ground, the weather, and other factors were elicited. *Id.*

■ In the case before us, the trial court recognized a strong interest in protecting the person or persons who cooperated with police by consenting to the use of the covert location. The court expressly stated that it was the safety of the cooperating citizens and the officers on duty that it sought to protect by granting the motion *in limine.* The court balanced this interest against appellant's right to confront witnesses by allowing cross-examination about what the officer could see from his location.

The factors identified by the *Green* court, including possible obstructions of Officer Johnson's view, his angle, and the distance between the surveillance location and the drug transaction, were all elicited during the officer's testimony. In addition to the testimony previously described, Officer Johnson testified that he was close enough to observe appellant without the aid of binoculars. He was standing and looking out of an open, standard-sized doorway. Officer Johnson testified that, from there, he had a clear view, despite the fact that it was around dusk, because the gas station had powerful overhead lights. The area was also lit by street lights. The officer testified that at no time did other people enter his sight line to obstruct his vision, although he did notice several people on another corner. A defense exhibit, a hand drawing of the intersection made by the officer, indicated his line of sight. Officer Johnson testified that he could see south down Forrest Park Avenue, just past an adjoining softball field. On

cross-examination, the officer detailed the buildings, bushes, and trees that appellant indicated may have obstructed his view. The officer also marked on the diagram how far north on Forrest Park Avenue he could see. He indicated on the drawing that he could see slightly farther west on Windsor Mill than he could see east on that same street. The officer testified he had to look across the intersection of the two streets to see the gas station.

Officer Johnson stated that he was at the covert location for ten to fifteen minutes, observing appellant, before the red truck came to the gas station. He described appellant as wearing cut off jean shorts and a white shirt. He testified to the location of Milburn in the truck, stating he was facing the liquor store next to the gas station. He also testified to the direction the defendant was facing while talking to Milburn. On cross-examination, the officer admitted that the unidentified man and appellant were very close to one another during their conversation. Although at this point both men were in sight, the officer admitted he did not get a description of the unidentified man or take any notes about his clothing.

Officer Johnson also testified that, after the unidentified man left the gas station, he could see appellant put something into the truck but could not see what it was. The officer stated that, while he could see one bill of U.S. currency change hands, he could not see its denomination. The officer testified that no change was returned to Milburn after Milburn gave appellant the bill.

Officer Johnson was questioned extensively on cross-examination about his ability to remember events that evening. In addition, he responded to questions relating to possible bias, interest, or motive. The transcript of the direct examination of Officer Johnson is approximately forty pages in length, and the cross-examination is nearly fifty pages. The officer testified to what he saw, his sight line, the angle of his view, lighting, timing, obstructions, his memory, and potential bias. Questioning from both sides elicited answers concerning the ability of the officer to see the area, significantly diminishing

any prejudice to appellant from the non-disclosure of the exact surveillance location. Appellant does not proffer what else he would have been able to ask the officer had the exact location of his surveillance been disclosed. We perceive no error.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**