*457 Judgment, Supreme Court, Bronx County (James M. Kindler, J.), rendered September 22, 2009, convicting defendant, after a nonjury trial, of perjury in the first degree (three counts) and perjury in the third degree, and sentencing him to an aggregate term of four months, concurrent with five years’ probation, unanimously modified, on the law, to reduce the conviction of perjury in the first degree under the third and fourth counts of the indictment to perjury in the third degree, and also modified, as a matter of discretion in the interest of justice, to reduce each term of imprisonment to two months, and otherwise affirmed. The matter is remitted to Supreme Court, Bronx County, for further proceedings pursuant to CPL 460.50 (5).
Defendant, a former police detective, was convicted of perjury based on his false testimony at the criminal trial of Erik Crespo. At defendant’s trial, Crespo testified as follows: On December 31, 2005, police arrested Crespo for a shooting that had occurred on December 25, 2005, brought him to the 44th Precinct in the Bronx, and left him alone in a room without giving him Miranda warnings. While Crespo was listening to an MP3 player, defendant entered the room and told him that he knew Crespo was involved in a shooting and wanted to ask him some questions. When defendant left the room for a few moments, Crespo activated the “Record” function on his player. Defendant returned and, again without giving Miranda warnings, interrogated Crespo for about 80 minutes. Crespo recorded the entire interrogation, during which he answered defendant’s questions.
Crespo further testified that, after the interrogation, defendant allowed Crespo’s mother and aunt into the room. Crespo told them that the police wanted him to make a written state *458 ment, and then said to his mother, “[H]e wants to know why I shot him.”
The following day, defendant filed a Detective Division Form DD5, which was admitted into evidence in the perjury trial. Defendant stated in the DD5 that he had tried to interview Crespo alone, but that Crespo would not make any statements or answer any questions. Defendant added that he had then allowed Crespo’s mother and aunt to join him in the room. Thereafter, Crespo’s mother answered a cell phone call, and while she told the caller that the police wanted to know Crespo’s side of the story, Crespo said to her, “[T]hey want to know why I shot him.” In addition, defendant wrote that he then searched Crespo and found a newspaper clipping about the shooting in his pocket.
In March 2007, defendant falsely testified at a pretrial hearing about, among other things, the admissibility of Crespo’s statement to his mother that defendant had reported on the DD5. An excerpt of the hearing testimony was introduced into evidence at the perjury trial. Defendant falsely testified that, before he brought Crespo’s relatives into the room, he had not questioned him, and that he “wouldn’t question him without Mirandizing him.”
In April 2007, defendant testified at Crespo’s trial about Crespo’s statement to his mother. On direct examination, defendant again falsely testified that he had not read Crespo his Miranda rights because he had not interrogated him, and that Crespo had not said anything about the crime before his statement to his mother.
On cross-examination, defendant repeatedly gave false answers in response to defense counsel’s questions. Among other things, defendant testified that he was alone in the interview room with Crespo for about “ten minutes or so, if that.” He denied that he was in the room with Crespo for more than an hour before he allowed Crespo’s mother and aunt to join them, and denied that he asked Crespo any questions during that time.
Using the transcript of Crespo’s recording of his interrogation, defense counsel confronted defendant with specific questions he had asked Crespo and statements he had made to him; defendant denied asking any of the questions or making any of the statements. For example, defendant denied telling Crespo the following: that if Crespo was “straight up” with defendant he would end up “beating [the] case”; that if Crespo did not tell defendant where the gun he used was, he would “lean on” Crespo and keep him from seeing a judge for three days; and *459 that if Crespo did not give a written statement he would not be able to talk. Defendant denied asking Crespo specific questions about the shooting and the whereabouts of the gun Crespo had used. He also denied that he tried to dissuade Crespo from getting a lawyer and that he told Crespo “the lawyer would not let him open his mouth because in a court of law they twist things around.”
Following the cross-examination, Crespo’s attorney had the transcript marked for identification and informed the court of its origins. The court advised defendant that he might want to consult with an attorney. Defendant asked the court, “When I speak to my attorney, your Honor, do I get to keep a copy of this fabricated transcript?” The case was adjourned, and when it resumed, the People changed their plea offer to Crespo from 15 to 7 years. Crespo accepted the more favorable offer and pleaded guilty to second-degree criminal possession of a weapon.
Thereafter, defendant was indicted on 12 counts of first-degree perjury. Eleven of the counts charged that defendant perjured himself by falsely denying that he had asked a specific question or made a specific statement during the interrogation. The twelfth charged that defendant falsely denied that he had interrogated Crespo before bringing in his relatives.
After a nonjury trial, defendant was convicted of first-degree perjury for answering “no” to the following questions during cross-examination:
“Now, you . . . said on direct examination that you never asked him any questions when you were alone with him in the room on December 31, 2005, isn’t that true?
“[answer second count]: That’s correct. He wasn’t questioned.
“Did you ever ask him, ‘where did you get the gun?’
“[answer third count]: No, Sir.
“Did you ever ask him ‘what did you do with the gun?’ “[answer fourth count]: No, Sir.”
Defendant was convicted of third-degree perjury on another count, and acquitted of the other eight counts of perjury.
Contrary to defendant’s contention, the evidence was legally sufficient to establish his intent to commit perjury (see People v Acosta, 80 NY2d 665, 672 [1993]). The length and content of the interrogation, along with surrounding circumstances, would have made it memorable to defendant. Accordingly, the evidence established that defendant knowingly and intentionally gave false testimony, and the court properly rejected his claim that he had forgotten about the interrogation because of the passage *460 of time and other factors. There is no reason to disturb the court’s credibility determinations.
Defendant further contends that even if he intended to commit perjury, he did not commit first-degree perjury, a class D felony, because the three false statements for which he was convicted were not “material to the action, proceeding or matter in which [they were] made” (Penal Law § 210.15). Instead, defendant argues, the convictions for the three statements should be reduced to the lesser included offense of perjury in the third degree, a class A misdemeanor, of which materiality is not an element (Penal Law § 210.05).
The materiality of perjured testimony is a question of fact (People v Davis, 53 NY2d 164, 170 [1981]). To be material, the testimony “need not prove directly the fact in issue”; it suffices if the testimony is “circumstantially material or tends to support and give credit to the witness in respect to the main fact” (id. at 170-171, quoting Wood v People, 59 NY 117, 123 [1874]). Thus, testimony is material if it “reflectfs] on the matter under consideration” (id. at 171, quoting People v Stanard, 42 NY2d 74, 80 [1977]), even if only as to the witness’s credibility (id.).
Defendant’s perjured testimony that he did not question Crespo when they were alone was material to the criminal trial. His denial of the lengthy undisclosed interrogation preceding Crespo’s allegedly spontaneous statement went to his credibility on matters that could have affected the jury’s verdict, had the trial been completed. The jury was entitled to a truthful account of the events leading up to the statement. The false testimony gave Crespo’s attorney the opportunity to raise issues concerning whether the statement was actually made, and whether it should be disregarded by the jury as involuntary. The prosecution’s decision to offer Crespo a more favorable plea offer immediately after defendant’s cross-examination demonstrates its material impact on the trial.
However, contrary to the trial court’s determination, defendant’s perjured statements that he did not ask Crespo where he got his gun and did not ask what he did with it were not material, because they are too narrow in scope and unrelated to the question of whether Crespo made a voluntary statement to his mother. Accordingly, the convictions with respect to those statements are reduced to perjury in the third degree.
We find the sentence excessive to the extent indicated. Concur—Tom, J.R, Mazzarelli, Sweeny, Freedman and AbdusSalaam, JJ.