Scileppi, J.
One summer afternoon in August, 1967 defendant, his wife and child gathered with David Richardson and his girl friend in front of a Manhattan stoop. Defendant, who had been ‘ ‘ dabbing at some beer can ’ ’ with a knife, accidentally cut Richardson when the latter’s hand got in the way. Richardson, seeking retribution for this wrong, challenged the defendant to a fight and afterwards emerged victorious. During the course of this embroilment, Richardson scattered the contents of defendant’s pockets on the ground. Defendant accused Richardson of taking $160, but this was denied.
Richardson’s initial success in this quixotic encounter proved, however, to be a Pyrrhic one. Later that evening, he joined the defendant and some associates in a local tavern. After all had imbibed, defendant renewed his charge that Richardson had taken his money. At the bartender’s request, defendant left. Richardson followed and shortly thereafter, a fight broke out. Five eyewitnesses testified that defendant drew a knife and that Richardson attempted to defend himself with a garbage can cover. It was during the course of this final encounter that Richardson suffered a knife wound which proved to be fatal.
Defendant, who had been injured, ran away, but friends of his victim gave chase. He was on his way to a hospital, but was stopped by one Richard Carroll, who attacked the defendant with a broom handle. Carroll was slashed by the defendant who then *139 proceeded to the hospital where he was later apprehended by the police. As a result of these altercations, defendant was indicted for murder in the second degree and assault in the first degree. After a jury trial, he was found guilty of manslaughter in the first degree and assault, second. He appeals to our court from a judgment of the Appellate Division, unanimously affirming this judgment of conviction.
Preliminarily, we observe that no argument is advanced that the proof offered by the People was deficient in any respect. Nor does the defendant question any rulings of the court during the course of the trial. This appeal addresses itself to pretrial matters. Specifically, defendant focuses his quest for a reversal on certain claimed errors occurring during the voir dire of the veniremen.
This voir dire was conducted by the parties under the procedure which existed prior to the recent change in the General Buies of the Administrative Board of the Judicial Conference which imposed that function on the Trial Judge.[1] Consequently, we do not have before us the question whether the Constitution’s guarantee of a jury trial precludes voir dire examinations conducted by the court alone. It is, however, evident that since the right to a jury means a jury which, as far as possible, is unbiased and unprejudiced, some form of voir dire is necessary so that the concomitant right to challenge prospective jurors may be intelligently and effectively exercised by the parties (see Swain v. Alabama, 380 U. S. 202). Initially, we recognize that we are dealing with an area of the law which does not lend itself to the formulation of precise standards or to the fashioning of rigid guidelines. To be sure, it would be a relatively simple matter to circumscribe voir dire inquiry by reference to the particular challenges for cause (see Code Grim. Pro., §§ 375, 376). However, the very existence of the peremptory challenge (see Code Grim. Pro., § 372) would require an application of Delphic powers for only then would we be able to anticipate every line of *140 inquiry which counsel might deem relevant to the exercise of such a challenge. These considerations compel the observation that it is the function of the trial court, involved and concerned with the quest for the truth, to strike the balance, true, no less in the conduct of the voir dire than in the conduct of the trial proper. The Judge presiding necessarily has broad discretion to control and restrict the scope of the voir dire examination. To that end, he may, in order to prevent inordinate interruptions and undue delay in the proceedings, question prospective jurors at the opening of the voir dire, during the course thereof or after counsel have concluded their examinations[2]. The only condition imposed is that fair opportunity be accorded counsel to question about matters, not previously explored, which are relevant and material to the inquiry at hand. Thus, in this appeal, we address ourselves to whether the trial court improperly restricted counsel’s voir dire examination.
Resolution of this question is in some measure impeded by the fact that no transcription of the voir dire appears in the record. By order of the Appellate Division, a hearing was held before a Special Referee who took evidence as to what transpired at the voir dire. The Referee found that defense counsel had advised the court that he felt that his examination was being unduly restricted. He unsuccessfully moved for a mistrial and requested that the voir dire be stenographically recorded. Although this request was granted, for reasons which do not appear, no transcription was made. This failure does not, however, mean that a reversal is mandated particularly in view of the overwhelming evidence of guilt against the defendant and counsel’s failure to object to the jury as finally selected. We agree with the Appellate Division that the Referee’s report “provides a sufficient factual account for purposes of review” (People v. Boulware, 35 A D 2d 925) and consequently, take his findings, confirmed by that court, as a substitute for an actual transcript.
It was the finding of the Referee that defense counsel had: ‘ ‘ attempted to question prospective jurors on various matters of law, including (a) the presumption of innocence, (b) the burden of proof, (c) the doctrine of ‘reasonable doubt,’ (d) the *141 meaning and purpose of an indictment, and (e) the absence of an obligation by a defendant to produce evidence in his own behalf. Upon the objection by the prosecuting attorney, or on its own motion, the trial court refused to permit Harap to inquire into any of these areas of the law.”
We are not persuaded that the court’s ruling as to these matters was an abuse of discretion. Although counsel has a right to inquire as to the qualifications of the veniremen and their prejudices so as to provide a foundation for a challenge for cause or a peremptory challenge (see Kr enter v. United States, 376 F. 2d 654, 656-657), it is well settled that it is simply not the province of counsel to question prospective jurors as to their attitudes or knowledge of matters of law (see, e.g., State v. Molina, 5 Ariz. App. 492; People v. Love, 53 Cal. 2d 843; Pinion v. State, 225 Ga. 36; People v. Lobb, 17 Ill. 2d 287; State v. Morris, 222 La. 480; Twining v. State, 234 Md. 97; People v. Lambo, 8 Mich. App. 320; State v. Bauer, 189 Minn. 280; State v. Smith, 422 S. W. 2d 50 [Sup. Ct., Mo.], cert, den., 393 U. S. 895; Oliver v. State, 85 Nev. 418; State v. Douthitt, 26 N. M. 532; Kephart v. State, 229 P. 2d 224 [Crim. Ct. App., Okla.]; Commonwealth v. Lopinson, 427 Pa. 284, vacated on other grounds 392 U. S. 647).
As the court observed in State v. Smith (422 S. W. 2d 50, 67-68, supra), “ Asking whether prospective jurors have any personal feelings for or against a rule of law is like asking whether they think the law is good or bad.” Indeed, nearly 70 years ago, our court held that it was beyond the scope of proper voir dire examination for counsel to propound questions as to the presumption of innocence and burden of proof in a criminal case (People v. Conklin, 175 N. Y. 333). As Judge O’Brien wrote for the court: ‘ ‘ The qualifications of a juror do not depend in any degree upon his knowledge or want of knowledge of the law of evidence as applicable to criminal trials. These were all matters of law which the juror was bound to take from the court. A juror cannot be a law to himself, but is bound to follow the instructions of the court in that respect, and hence his knowledge or ignorance concerning questions of law is not a proper subject of inquiry upon the trial of the challenge for cause.” (175 N. Y. 333, 339-340.) The reason for this rule is clear. The role of the jury - is limited to .the resolution of factual issues. Inasmuch as it *142 must be presumed that the court’s instructions will adequately inform the jury as to the applicable law (People v. Love, 53 Cal. 2d 843, supra), questions as to their knowledge or attitudes relating to a particular rule of law are irrelevant to their functions as jurors and hence, have no bearing on their qualifications (People v. Lobb, 17 Ill. 2d 287, supra). It would, of course, have been an entirely different matter had counsel attempted to ask whether a prospective juror would have any difficulty in following the instructions of the court. Thus, although counsel is not privileged to elicit viewpoints relating to matters of law, he is entitled to ask whether a prospective juror would obey the court’s instructions (State v. Smith, 422 S. W. 2d 50, 68, supra). The record before us reveals no such attempt by defense counsel.[3] Consequently, though counsel should be given a wide degree of latitude in determining the qualification or fairness of a prospective juror, “ [t]he trial court not only may, but should, preclude counsel from interrogating on issues of law” (Oliver v. State, 85 Nev. 418, 423, supra). Inasmuch as defendant advances no argument that the court’s instructions as to the five questions of law were in any way erroneous, we conclude that the court’s rulings on voir dire were entirely proper.
Defendant has also proffered the argument that, in addition to questions of law heretofore discussed, the court barred questioning as to other matters which directly related to the juror’s qualifications. At the hearing before the Referee, defendant’s trial counsel testified that he had attempted 15 lines of inquiry. These areas included questions dealing with the prospective jurors’ occupations, education, experience with crime, and knowledge of or familiarity with the defendant, his victims, counsel or the police. Additionally, other questions related to whether they would give the defendant a fair trial, and how they would react to certain witnesses. There is little doubt that these are all the precise kind of questions which should be permitted during a voir dire. Moreover, the parties may always inquire as to those matters which would constitute a sufficient ground for a challenge for cause (see Code Grim. Pro., §§ 375, 376). There is, however, no finding by the Special Referee that counsel was *143 ever precluded from asking questions of this nature. Instead his findings were limited to the questions relating to applicable law. Inasmuch as the Referee was free to discount the testimony offered by the defendant, his findings are supported by the evidence and we must assume that counsel was not inhibited as to these other matters.
Furthermore, we see no merit in defendant’s argument that it was reversible error for the court to urge counsel on more than one occasion, to ‘ ‘ get on with it ’ ’ and admonish him that a lot of time was being wasted. The Referee found that, although these statements were made, there was no evidence to warrant the conclusion that the court was continually hastening the voir dire. We see no reason why the court — in the exercise of its discretion and in the interests of preventing unduly long voir dire examinations ■—may not expedite matters especially where, as here, the record shows that counsel insisted on questioning as to matters not relevant to the voir dire.
Lastly, defendant argues that the mere fact that one prospective juror was asked by the prosecutor whether he had encountered the defendant during the course of his work as a welfare worker requires a reversal. This is untenable for, at best, the question was innocuous and we do not agree that defendant was unduly prejudiced by this minor incident.
Accordingly, the judgment appealed from should be affirmed.
Chief Judge Fuld and Judges Burke, Bbegan, Breitel, Jasen and Gibson concur.
Judgment affirmed.

. Under the new practice, which went into effect on January 4, 1971, voir dire examinations in the first instance are conducted by the Judge. The court may, in its discretion, permit additional examinations by the respective parties (22 NYCRR 20.13). Although several attempts were made during the recent session of the Legislature to codify this new procedure (see, e.g., Bills S6275 and A6985), they proved unsuccessful.

. We note that this was the rule both under the former procedure in effect at the time of defendant’s trial and under the procedure prescribed by section 270.15 of the Criminal Procedure Law which becomes operative on September 1, 1971.

. On the contrary, it appears from the findings of the Referee, which refer to a list of questions propounded by the prosecutor, that this question was asked by the Assistant District Attorney.