[950 NE2d 480, 926 NYS2d 847]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OWEN STEWARD, Appellant.

Argued May 2, 2011; decided June 7, 2011

## POINTS OF COUNSEL

*Office of the Appellate Defender*, New York City (*Jalina J. Hudson, Richard M. Greenberg* and *Eunice C. Lee* of counsel), for appellant. I. Owen Steward was denied his right to a fair and impartial jury and to meaningful participation in jury selection where the trial court arbitrarily and systematically imposed a five-minute limit on voir dire, thereby prohibiting defense counsel from conducting an adequate inquiry of prospective jurors. (*People v Branch*, 46 NY2d 645; *People v Rampersant*, 182 AD2d 373; *People v Hoffler*, 53 AD3d 116; *United States v Quinones*, 511 F3d 289; *People v Jean*, 75 NY2d 744; *People v Wright*, 13 AD3d 726; *People v Davis*, 166 AD2d 453; *People v Erickson*, 156 AD2d 760; *People v Habte*, 35 AD3d 1199.) II. The fact-finding province of the jury was usurped where the trial court permitted witnesses to identify Owen Steward on a videotape that had been admitted into evidence, thereby denying Mr. Steward his right to a fair trial. (*People v Narrod*, 23 AD3d 1061; *Corelli v City of New York*, 88 AD2d 810; *Kulak v Nationwide Mut. Ins. Co.*, 40 NY2d 140; *People v Harte*, 29 AD3d 475.) III. The trial court abused its discretion and denied Owen Steward due process by ruling that, if Mr. Steward chose to testify at trial, he could be impeached by a 13-year-old conviction that was remote and lacked probative value. (*People v Sandoval*, 34 NY2d 371; *People v Ellis*, 94 AD2d 652; *People v Cooke*, 101 AD2d 983; *People v Pippin*, 67 AD2d 413; *People v Schwartzman*, 24 NY2d 241; *People v Williams*, 56 NY2d 236; *People v Dickman*, 42 NY2d 294; *People v Grant*, 7 NY3d 421.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Timothy C. Stone* and *Dana Poole* of counsel), for respondent. I. Contrary to defendant's largely unpreserved argument, the trial judge properly exercised her broad discretion by setting reasonable time limits on the parties' voir dire. (*People v Boulware*, 29 NY2d 135; *People v Rampersant*, 182 AD2d 373; *People v Jean*, 75 NY2d 744; *People v Nieves*, 2 NY3d 310; *People v Hines*, 97 NY2d 56; *People v Corbett*, 68 AD2d 772, 52 NY2d 714; *People v Jelke*, 284 App Div 211, 308 NY 56; *People v Smith*, 290 AD2d 367, 97 NY2d 762; *People v Rodriguez*, 184 AD2d 317, 80 NY2d 909; *People v Hecker*, 15 NY3d 625.) II. The trial judge appropriately exercised her discretion by allowing testimony about

the nightclub surveillance video. (*People v Russell*, 79 NY2d 1024; *People v Grant*, 7 NY3d 421; *People v Romero*, 78 NY2d 355; *People v Medina*, 53 NY2d 951; *People v Rivera*, 259 AD2d 316; *United States v Robinson*, 804 F2d 280; *People v Harte*, 29 AD3d 475; *Corelli v City of New York*, 88 AD2d 810; *People v Sampson*, 289 AD2d 1022, 97 NY2d 733; *People v Morgan*, 214 AD2d 809, 86 NY2d 783.) III. The court's *Sandoval* ruling was a proper exercise of discretion. (*People v Sandoval*, 34 NY2d 371; *People v Hayes*, 97 NY2d 203; *People v Grant*, 7 NY3d 421; *People v Romero*, 78 NY2d 355; *People v Greer*, 42 NY2d 170; *People v Williams*, 56 NY2d 236; *People v Mayrant*, 43 NY2d 236; *People v Walker*, 83 NY2d 455; *People v Rivera*, 227 AD2d 205, 88 NY2d 993; *People v Rodriguez*, 284 AD2d 243, 97 NY2d 643.) IV. The lower court properly provided the deliberating jurors, at trial defense counsel's request, with written copies of its instructions on the elements of the charged crimes. (*People v Lewis*, 5 NY3d 546; *People v Aezah*, 191 AD2d 312, 81 NY2d 1010; *People v Owens*, 69 NY2d 585; *People v Douglas*, 156 AD2d 173.)

## OPINION OF THE COURT

GRAFFEO, J.

The issue before us in this appeal is whether the trial court abused its discretion in imposing a five-minute limitation on counsel for the questioning of jurors during each round of voir dire in this multiple felony case. Based on the seriousness and number of charges, the identity of the victim and certain characteristics of prospective jurors that were revealed during examination by the court, we conclude that the trial court erred in adhering to the unusually short time restriction after defense counsel objected. Defendant is therefore entitled to a new trial.

This prosecution arose from a robbery that allegedly occurred outside a Manhattan nightclub in the early morning hours of July 23, 2006. The alleged victim of the crime was Raashaun Casey, a prominent radio personality in New York City known as "DJ Envy" who hosted a show on "HOT 97," a popular radio station. According to the witnesses presented by the People at trial, defendant and an unidentified accomplice accosted Casey and his friend Derrick Parris at gunpoint as the two men were leaving the nightclub, demanding that Casey hand over his $25,000 gold and diamond necklace.

After obtaining the necklace, defendant and the accomplice fled the scene in a vehicle driven by defendant. Casey and Paris

followed them in Casey's car, resulting in a high speed car chase through lower Manhattan. The defendant's vehicle crashed and the pursuit continued on foot, with the victim and Parris ultimately apprehending and detaining defendant but not the accomplice (whose identity remains unknown). Defendant offered proof suggesting that he had been beaten by Casey and Parris before the police arrived, which resulted in his hospitalization for several days after his arrest. Defendant was subsequently charged with multiple counts of first- and second-degree robbery as well as various weapon possession offenses.

Prior to the commencement of jury selection, the trial judge informed the parties that the attorneys would be given only five minutes to question each panel of prospective jurors. The judge began voir dire by instructing and examining the venire members on a variety of topics and then permitted counsel to question the panel. At the conclusion of the first round of voir dire, defense counsel objected to the time limit, contending that five minutes was an insufficient period of time for counsel to conduct an adequate inquiry of venire persons in light of the complexity of the prosecution, which involved multiple class B felony charges. Defense counsel suggested that the trial judge's usual five minute "rule" that she had employed in misdemeanor cases—where only six jurors were being selected and the parties had only three peremptory challenges—should not apply in this instance where the charges against defendant were serious, 12 jurors were being selected and the parties would be exercising 15 peremptory challenges. He also cited examples of several topics that he hoped to discuss with the prospective jurors but had not had time to address as he was able to speak to only two of the 16 prospective jurors during the allotted time. Without addressing defendant's objection, the court continued to enforce the time limit in the two subsequent rounds of voir dire.

The impact of this decision was evident throughout the remainder of voir dire, particularly in the third round. In response to questioning by the court, 12 prospective jurors indicated that they, or people close to them, had been victims of robbery or theft. Several others stated that they had either witnessed or been the victims of violent crimes. Some of these individuals told the judge that they did not "think" their past experiences would affect their ability to deliberate in this case while at least one indicated it might (the court did not follow-up with this juror). After this series of questions, the court sua sponte excused a number of jurors but the record does not

indicate whether the individuals that had been crime victims were discharged (defendant suggests that none were). Given the unusual role the victim allegedly played in facilitating defendant's capture and arrest and the considerable number of venire members that had been victims of crime, there were undoubtedly topics that would have been appropriate for follow-up questioning by counsel.

During this same round, two prospective jurors indicated that they had ties to law enforcement and several others identified themselves as lawyers or law students. Two members of the panel stated they had previously served on a jury; one had deliberated to verdict and the other case ended in a hung jury. In addition, three jurors responded that they were familiar with "DJ Envy," with one acknowledging that he listened to the victim's radio show.[1]

Yet, as a result of the time restriction on questioning by counsel, defense counsel had only five minutes to explore the issues that had arisen during questioning by the court. Defense counsel used his time segment to ask follow-up questions of the prospective juror that had previously sat on a deadlocked jury. He also inquired of the panel whether jurors would hold it against his client if he did not give an opening statement and whether they would draw a negative inference from his client's decision not to testify on his own behalf. At this point, the court interrupted counsel to warn him that only one minute remained for questioning. Time expired before defense counsel had an opportunity to examine any of the prospective jurors who stated that they had heard of the victim or indicated that they had been witnesses or victims of crime.

After the jury was selected and sworn, the trial proceeded and defendant was convicted of two counts of robbery in the first degree and one count of robbery in the second degree. On appeal, defendant contended that he should be granted a new trial because counsel was not provided with an adequate opportunity to examine prospective jurors during voir dire and the defense

---

1. This was a recurring theme during jury selection. Before prospective jurors were placed in panels, the trial court generally asked the entire venire whether they had heard of or knew the victim either by the name Raashaun Casey or "DJ Envy." Many individuals raised their hands. The court then instructed that anyone who thought his or her knowledge of the victim would impede fair consideration of the evidence was free to leave. An unidentified number of individuals left—but it appears that many prospective jurors that were familiar with the victim remained, including the three venire members questioned during the third round.

was prejudiced as a result. The Appellate Division rejected this argument and affirmed the conviction (72 AD3d 524 [2010]). A Judge of this Court granted defendant leave to appeal (15 NY3d 810 [2010]) and we now reverse.

In criminal cases, jury selection is governed by CPL 270.15, which directs that prospective jurors will initially be questioned by the trial court (CPL 270.15 [1] [b]). The statute also provides:

> "The court shall permit both parties . . . to examine the prospective jurors, individually or collectively, regarding their qualifications to serve as jurors. Each party shall be afforded a fair opportunity to question the prospective jurors as to any unexplored matter affecting their qualifications, but the court shall not permit questioning that is repetitious or irrelevant, or questions as to a juror's knowledge of rules of law" (CPL 270.15 [1] [c]).

CPL 270.15 does not contain guidelines relating to the duration of voir dire but states that the scope of counsel's examination of prospective jurors "shall be within the discretion of the court" (*id.*). This Court has emphasized the broad discretion afforded trial courts in this arena (*see People v Jean*, 75 NY2d 744 [1989]; *People v Pepper*, 59 NY2d 353 [1983]; *People v Boulware*, 29 NY2d 135 [1971], *cert denied* 405 US 995 [1972]), while cautioning that any restrictions imposed on voir dire "must nevertheless afford . . . counsel a fair opportunity to question prospective jurors about relevant matters" (*Jean*, 75 NY2d at 745).

As we have previously recognized, this area of law is not amenable to "the formulation of precise standards or to the fashioning of rigid guidelines" that can be applied across-the-board in all cases (*Boulware*, 29 NY2d at 139). Thus, the Legislature has left to the trial court the supervision of the process of counsel questioning during jury selection. Should a court choose at the outset to allocate a fixed period of time for such questioning, the allotment should be appropriate to the circumstances of the case.

It would be impossible to compile an exhaustive list of all the factors that might inform a trial court's determination of this issue. But, in most cases, relevant considerations would include: the number of jurors and alternate jurors to be selected and the number of peremptory challenges available to the parties; the number, nature and seriousness of the pending charges; any notoriety the case may have received in the media or local

community; special considerations arising from the legal issues raised in the case, including anticipated defenses such as justification or a plea of not responsible by reason of mental disease or defect; any unique concerns emanating from the identity or characteristics of the defendant, the victim, the witnesses or counsel; and the extent to which the court will examine prospective jurors on relevant topics. Because voir dire is a fluid process and it is not always possible to anticipate the issues that may arise during examination of the venire, it is also incumbent on counsel to advise the court if any temporal limitation imposed relating to juror questioning is proving, in practice, to be unduly restrictive and prejudicial.

In this case, the trial judge was particularly conscientious in her extensive examination of the venire and her sua sponte discharge of prospective jurors who offered troubling responses—a commendable approach that is certainly to be encouraged. But the controversy centers around the court's imposition of a five minute restriction on counsel questioning for each round of voir dire. As defendant points out, five minutes per round is significantly shorter than the time restrictions that have previously been upheld in this Court and the Appellate Divisions (*see Jean*, 75 NY2d 744 [trial court did not abuse its discretion in limiting counsel questioning to 15 minutes in first two rounds and 10 minutes in third round of voir dire]; *see e.g. People v Davis*, 166 AD2d 453 [2d Dept 1990], *lv denied* 76 NY2d 985 [1990] [15 minute restriction in first round followed by 10 minutes in second and third rounds not an abuse of discretion]; *People v Erickson*, 156 AD2d 760 [3d Dept 1989], *lv denied* 75 NY2d 966 [1990] [10 minute restriction in each round was not an abuse of discretion]). While we agree with the People that this fact is not determinative because the propriety of a limitation on counsel questioning must be assessed based on all the circumstances presented in a particular case, the fact that the time restriction appears to be substantially shorter than the norm in this multiple felony prosecution is an important consideration in our review of defendant's claim.

It is also significant that defendant was facing four serious class B violent felony charges—offenses punishable by up to 25 years in prison—as well as five other felony offenses. And jury selection was complicated by the fact that the victim was a local radio celebrity. During questioning of the venire, it became apparent that the victim was known to many prospective jurors, with one panel member cryptically indicating that the radio

station that carried his program had a "reputation" in the community. In addition, the facts were somewhat unusual as the case involved allegations that the victims of the crime had turned the tables on the assailants after the robbery, pursuing them in a car chase and eventually capturing defendant (allegedly through the application of significant force). The case therefore raised potentially sensitive issues concerning the use of self-help by crime victims—a consideration that increased in significance once it became apparent that many of the prospective jurors had themselves been victims of crime.

In light of these circumstances, it would not have been surprising if the trial court had allotted a longer-than-average period of time for the attorneys to conduct their questioning. Instead, the attorneys were significantly limited in their efforts to follow-up on provocative answers given by prospective jurors in response to the court's inquiries. Although defense counsel specifically alerted the court during the first round of voir dire that the time limit was unduly restrictive and that he had been able to examine only two jurors during the allotted five minutes, the judge neither revisited the issue nor explained why she had concluded that five minutes was sufficient.[2]

Defendant argues that the trial judge did not offer an explanation because she applied a similar rule for jury selection in all cases, regardless of the number of jurors being selected, the number or seriousness of the charges or the complexity of the issues. Although such a "one size fits all" approach does not seem to have been what the Legislature had in mind when it granted trial courts broad discretion in CPL 270.15 (1) (c), the fact that the trial court may or may not have imposed the same limitation in other cases is not relevant to the resolution of this appeal. And, from a practical standpoint, some uniformity in jury selection procedures involving comparable prosecutions is to be expected. Judges may well begin voir dire with the assumption that a time limitation that has proven appropriate in other similar trials will be adequate again (although the court should be willing to reconsider the propriety of that restriction if a party raises a legitimate concern once jury selection is underway).

---

**2.** While the trial court certainly had no obligation to articulate the basis for her decision on the record, such an explanation would have facilitated appellate review. Without it, we must search the record ourselves to discern whether there was a sufficient basis for the court's conclusion that the time restriction provided counsel the requisite "fair opportunity" to examine prospective jurors.

But, as noted above, this was hardly a typical case. And, after counsel brought the issue to the court's attention, the difficulties posed by the time restriction became more apparent when a significant number of venire members revealed that they, or someone close to them, had been a crime victim and several others indicated their familiarity with the victim. Considering the factors that we have discussed, we conclude that the trial court abused its discretion in continuing to enforce the five-minute limitation on counsel questioning after counsel's timely objection explaining why the time period was insufficient.

█ This error, standing alone, does not warrant reversal. A trial court's abuse of discretion in limiting the scope of counsel questioning will not warrant reversal unless defendant establishes that he suffered prejudice (*see Jean*, 75 NY2d at 745). In this case, however, the prejudice inquiry is hampered by the manner in which the jury selection process was transcribed by the court stenographer. The prospective jurors that answered questions are not identified in the record by name, initials or panel number. Rather, all members of the venire are referred to as "prospective juror" in the transcript making it difficult to differentiate between them. And there were occasions when groups of prospective jurors were excused sua sponte by the court but the record fails to identify which individuals were retained and which were dismissed. Through no fault of the court or defense counsel, it is therefore difficult to definitively resolve certain issues relevant to the prejudice inquiry.

Defendant contends that he suffered prejudice because critical issues were revealed during jury selection involving a large number of prospective jurors and, as a result of the five-minute time restriction, his attorney was unable to query the various venire members that had responded to the court's inquiries in a problematic or provocative manner. And he suggests that some of these individuals did, in fact, serve on the jury that convicted him.

Given the lack of clarity in the record concerning whether certain prospective jurors were discharged or retained, we cannot say that defendant's claim of prejudice is refuted by the record. This is not a case where defendant has done nothing other than identify one or two venire persons who made questionable remarks but were not examined by counsel due to a time constraint. In the third round of voir dire alone, more than a dozen prospective jurors seem to have said something that invited additional inquiry in connection with their knowledge of the victim

or status as a crime victim or witness—topics especially pertinent to this case. While none of these jurors made statements that, without further elaboration, would have justified their dismissal for cause, the purpose of follow-up questioning by the court or counsel is to explore hidden biases. During jury selection, attorneys pay close attention to juror responses in order to identify who should be challenged "for cause" and decide whether to exercise peremptory challenges. This process may be thwarted if an insufficient amount of time is permitted for questioning. And, here, due to peculiarities in the record, it is impossible to contradict the contention that the problematic prospective jurors that counsel was unable to examine ultimately sat on the jury that convicted him of multiple class B violent felonies.

Although we conclude that reversal is warranted in this case, we agree with the People that it is certainly possible that the statements made by these venire members were not indicative of any inappropriate bias (this, too, might have been established had counsel been provided a greater opportunity to pursue follow-up questioning). And we also recognize that efficiency is an important consideration and that judges are in the difficult position of having to properly marshal limited court resources while at the same time respecting the rights of jurors and ensuring that the parties receive a fair trial. Sometimes this can be a difficult balance to strike. But the fact remains that trial judges are not always able to cover all avenues of questioning that interest the parties during voir dire—that is why the Legislature has directed that counsel must be provided a "fair opportunity" to examine prospective jurors after the court has concluded its questioning (see CPL 270.15 [1] [c]). Since the record here establishes that the unusually short time restriction imposed by the court prevented counsel from having a sufficient opportunity to examine the various prospective jurors whose statements could reasonably be expected to elicit further questioning, and defendant's claim of prejudice cannot be discounted, we conclude that the conviction must be reversed and the case remitted for a new trial.

In light of our resolution of the voir dire issue, it is unnecessary for us to consider defendant's other claims of error.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

SMITH, J. (dissenting). This case seems to me to raise a single issue: Is five minutes of lawyer-conducted voir dire per side too

little time, as a matter of law, for the first round of jury selection in a felony case? I would answer that question no. The majority does not address it, but answers another question, one I do not think is preserved in this record.

After conducting her own voir dire of the first-round panelists, the trial judge gave each counsel five minutes to question them. After they had done so, defense counsel asked "to put on the record my objection to the time limit." He made clear that the objection was one he had made to the same judge before, in other cases: "I tried cases before you in supreme court and criminal court. My objection isn't something new to you, but I need to make it nevertheless." Counsel then spoke about the importance of peremptory challenges and the need for a "fair opportunity to question jurors." He said that he had found "no case where only five minutes was allowed in the first round of voir dire, particularly a Class B violent felony or any other felony." He relied on a mathematical calculation: "Sixteen jurors in the box and five minutes to speak with them averages to less than 20 seconds per [prospective] juror."

Counsel made no criticism of the judge's voir dire, and acknowledged it was "thorough," but stressed that his job as an advocate was different from the judge's. He summarized by saying: "[M]y objection is that your time limit here in this case violates the defendant's statutory right to exercise preliminary challenges and violates his rights under the state and federal constitution." At the end of his argument, counsel briefly mentioned the circumstances of the present case, saying that he "used up four out of my five minutes" in questions of individual jurors and was forced to omit some subjects he would have covered with the group.

It is clear to me that counsel was making a generic objection to the five minute time limit, though he illustrated his argument by referring to the case at hand. He was saying that, at least in the first round of a felony case, where 12 jurors may be selected and that number of panelists or more—16 in this case—are being interviewed, five minutes is just not enough time for a lawyer to talk to them. The argument is not an unreasonable one, but I would reject the per se rule that defendant asked for.

CPL 270.15 (1) (c) says, in relevant part:

> "The court shall permit both parties . . . to examine the prospective jurors, individually or collectively,

regarding their qualifications to serve as jurors. Each party shall be afforded a fair opportunity to question the prospective jurors as to any unexplored matter affecting their qualifications, but the court shall not permit questioning that is repetitious or irrelevant, or questions as to a juror's knowledge of rules of law."

The question here is whether, by limiting defendant to five minutes in the first round, the trial court denied him "a fair opportunity to question the prospective jurors as to any unexplored matter affecting their qualifications." What amounts to "a fair opportunity" is to be decided by the trial court in its discretion (*People v Jean*, 75 NY2d 744 [1989]). In *Jean*, we held that a trial court did not abuse its discretion by limiting counsel to 15 minutes in each of the first two rounds, and 10 minutes in the third.

So long as the trial court allows some appreciable time for lawyer questioning—and five minutes is appreciably more than zero—I would not hold as a matter of law that any minimum number of minutes is necessary. A lawyer who thinks more time is needed to "question the prospective jurors as to any unexplored matter" should tell the court what the "unexplored matter" is; in this case, defense counsel identified no subject not covered in the trial court's own "thorough" questioning. If he had done so, the judge might well have given him more than five minutes.

In exercising its discretion to keep lawyers on a very short leash during voir dire, the trial court implicitly recognized two important facts of courtroom life: Time is precious, and lawyers questioning prospective jurors waste a lot of it. Lawyer-conducted voir dire no doubt has its value, but it is a very inefficient process, as lawyers understandably try to get to know as well as they possibly can each human being who might serve on the jury. The Legislature's purpose in enacting CPL 270.15 (1) (c) was to avoid such waste of time by "instructing the court to maintain tight control over voir dire questioning" (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 270.15, at 276 [2002 ed])—a practice we had previously encouraged (*People v Boulware*, 29 NY2d 135, 140 [1971]). I believe we would best serve the legislative goal by not requiring any arbitrary minimum for lawyer-conducted voir dire.

Today's majority does not suggest that it disagrees. Indeed, it disapproves of rules "that can be applied across-the-board in all

cases" in this area (majority op at 110). Yet it reverses defendant's conviction on a ground that defendant never presented to the trial court: that the special circumstances of this case rendered the five minute limit too strict—especially in the third round of jury selection, where an unusual number of people who had been, or whose relatives had been, crime victims appeared as prospective jurors.

The majority may be right about this, but I do not see why defendant should be excused from preserving the argument. He could have said to the trial judge, essentially, everything the majority now says, but he said none of it. He never suggested that he needed more time in the third round to ask about the crimes of which panelists or their family members had been victims; indeed, he made no objection to the time limit during the third round of jury selection. He did not say, at any stage of the voir dire, that the victim's modest fame, or any other fact unique to this case, made lengthier questioning appropriate. If he had said that, perhaps the trial judge would have agreed with him. But he preserved only a generic objection to the time limit. Since I think that objection should fail, I would affirm.

Chief Judge LIPPMAN and Judges CIPARICK, PIGOTT and JONES concur with Judge GRAFFEO; Judge SMITH dissents and votes to affirm in a separate opinion in which Judge READ concurs.

Order reversed, etc.