# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1453**

**KA 09-01308**

PRESENT: SCUDDER, P.J., SMITH, FAHEY, AND MARTOCHE, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                        MEMORANDUM AND ORDER

MICHAEL MCGREW, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (PIOTR BANASIAK OF
COUNSEL), FOR DEFENDANT-APPELLANT.

MICHAEL MCGREW, DEFENDANT-APPELLANT PRO SE.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL
OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (William D.
Walsh, J.), rendered June 15, 2009.  The judgment convicted defendant,
upon a jury verdict, of criminal possession of a weapon in the second
degree and unlawful possession of marihuana.

It is hereby ORDERED that the judgment so appealed from is
unanimously reversed on the law, that part of the omnibus motion
seeking suppression of physical evidence is granted, the indictment is
dismissed, and the matter is remitted to Onondaga County Court for
further proceedings pursuant to CPL 470.45.

Memorandum:  On appeal from a judgment convicting him following a
jury trial of criminal possession of a weapon in the second degree
(Penal Law § 265.03 [3]) and unlawful possession of marihuana (§
221.05), defendant contends that reversal is warranted because the
police officer who stopped both defendant and his codefendant prior to
their arrest lacked the statutory authority to do so.  We agree, and
conclude that County Court therefore erred in refusing to suppress the
physical evidence obtained as a result of that illegal stop.

The subject stop occurred in a college parking lot in the Town of
DeWitt at approximately 7:30 p.m. on December 28, 2008.  A City of
Syracuse police detective assigned to a security detail for an
athletic event at the college saw codefendant approach the foyer of
its gymnasium.  According to the detective, codefendant then turned
around and started walking back in the direction from which he came.
The detective followed codefendant in his police car, and observed
codefendant approach a parked sedan.  Codefendant opened the front
passenger-side door of the sedan, leaned in, leaned back out, closed
the door and proceeded back toward the gymnasium.

At that point, the detective exited his police vehicle and asked to speak to codefendant, who, according to the detective, smelled of burnt marihuana. Defendant emerged from the car several seconds later and stopped walking when the detective asked to speak with him. The detective then recognized that defendant had bloodshot eyes and also smelled of burnt marihuana, which defendant and codefendant admitted to having smoked. After his partner arrived on the scene, the detective looked into the car with a flashlight to make sure no one else was in that vehicle. He saw a small baggie containing a leafy substance in the compartment of the driver's side door, which he believed to be marihuana. The detective, who detected an odor of unburned marihuana around the car, then asked codefendant and defendant for consent to search that vehicle. Consent was granted, and the ensuing search revealed a loaded revolver on the floor in front of the passenger seat. The detective then called the DeWitt police to effect a formal arrest of defendant and codefendant, and the gun and the marihuana were subsequently seized from the vehicle. The parties thereafter stipulated that the events in question occurred more than 100 yards from the boundary line of the City of Syracuse.

Pursuant to CPL 140.50 (1), "a police officer may [under certain circumstances] stop a person in a public place located *within the geographical area of such officer's employment*" (emphasis added), the relevant "geographical area" in this case being the City of Syracuse (CPL 1.20 [34-a] [b]). We thus conclude that, under these circumstances, the detective lacked statutory authorization to stop and question defendant in the Town of DeWitt (*see People v Howard*, 115 AD2d 321, 321; *Brewster v City of New York*, 111 AD2d 892, 893). Moreover, on these facts, the detective's violation of CPL 140.50 (1) requires suppression of the evidence derived therefrom, i.e., the gun and the marihuana seized from the car (*see People v Greene*, 9 NY3d 277, 280-281). We thus grant that part of defendant's omnibus motion seeking suppression of that physical evidence, dismiss the indictment, and remit the matter to County Court for further proceedings pursuant to CPL 470.45.

As an alternative ground for reversal, defendant contends that the court abused its discretion in rejecting defense counsel's peremptory challenge to a prospective juror. This contention is properly before us (*see* CPL 470.05 [2]; *cf. People v Buckley*, 75 NY2d 843, 846), and we conclude that it too has merit.

At the outset of jury selection, the court told the attorneys for both defendant and codefendant that they would have a total of 15 peremptory challenges, with seven challenges allocated to defendant and eight to codefendant. Then, consistent with *People v Alston* (88 NY2d 519, 524-529), the court determined that the parties could exercise peremptory challenges only to the number of jurors necessary to seat a twelve-person venire. Put differently, the court indicated that the parties would consider prospective jurors in groups of equivalent size to the number of seats to be filled on the jury, and that peremptory challenges would be exercised with respect to each such group.

After the prosecutor exercised his peremptory challenges with respect to the first group of prospective jurors, the court turned to the defenses' peremptory challenges, and told codefendant's counsel that "this is a combination.  Both of you have to agree." Codefendant's attorney indicated that he had talked with defendant's attorney "about most of these," and proceeded to exercise four peremptory challenges.

The foregoing peremptory challenges were shared with defendant, and the court did not ask defense counsel about peremptory challenges before proceeding to the next group of seven prospective jurors under consideration.  With respect to that group of prospective jurors, the prosecutor had exercised one peremptory challenge and codefendant's attorney had exercised two such challenges before defendant's attorney indicated that "we," i.e., defendant's attorney and codefendant's attorney, "need to talk a second."  After an off-the-record discussion, codefendant's attorney indicated that "we're going to exercise one more peremptory challenge," and proceeded to do so.  The court then swore the eight jurors that had been selected by that point, and thereupon recessed for lunch.

Following lunch, the court conducted the voir dire of the next group of prospective jurors.  At the end of that questioning, defendant's attorney indicated that he and codefendant's attorney "have to share" the juror questionnaires, and that "[i]f one of us objects to the exercise of peremptory, that person is seated, so we are debating between ourselves which kind of makes it a little bit more complicated."  The court eventually entertained challenges to a group of four prospective jurors, at which time the prosecutor exercised one peremptory challenge and codefendant's attorney exercised two.  Once again, defendant's attorney did not personally exercise any peremptory challenges.

At that point, there were three jurors left to be selected, and the prosecutor and codefendant's attorney used one and two peremptory challenges, respectively, on the group of three prospective jurors before them.  Another group of three prospective jurors was brought before the parties, and codefendant's attorney exercised a peremptory challenge with respect to one such prospective juror, and asked, "How many do I have left[?]"  The court, apparently speaking to defendant's attorney, stated that "[y]ou're keeping track," and defendant's attorney indicated that there were four remaining defense peremptory challenges, which the court reduced to three in view of the challenge to the subject prospective juror.

Codefendant's attorney then attempted to challenge another prospective juror, who was not part of the group then under consideration.  The court refused to accept the challenge, noting that the particular prospective juror at issue was not part of the subject group.  The court thereafter seated the two remaining prospective jurors in that group of three.

With one juror remaining to be seated, the court instructed the attorneys to use any challenges with respect to that new prospective

juror.  On the prompt of defendant's attorney, codefendant's attorney challenged the sole prospective juror in that group, and defendant's attorney then inquired whether one of the prospective jurors from the previous group of three prospective jurors had been seated.  The clerk answered affirmatively, and codefendant's attorney complained that "we did not want [that prospective juror]."  The court ignored the further complaint of codefendant's attorney that the court was proceeding "too fast" through jury selection, and denied the request of codefendant's attorney to strike the juror at issue.  A 12th juror was subsequently seated, and codefendant's attorney then objected to the presence of the juror at issue on the jury on the ground that proceedings were "just going too fast, I couldn't hear."  The court noted the objection before swearing the remaining jurors.  The record reflects that approximately one minute passed between the time at which the juror at issue was seated and the time at which the jury was sworn.

Under these circumstances, "we can detect no discernable interference or undue delay caused by [the] momentary oversight [of the attorneys for defendant and codefendant] that would justify [the court's] hasty refusal to entertain [their] challenge.  Accordingly, we conclude that the court's denial of the challenge was an abuse of discretion (*see generally People v Steward*, 17 NY3d 104 [trial court's limitation on time given for voir dire held an abuse of discretion]) and, because the right to exercise a peremptory challenge against a specific prospective juror is a 'substantial right' (*People v Hamlin*, 9 AD2d 173, 174), reversal is mandated" (*People v Jabot*, 93 AD3d 1079, 1081-1082).

We now turn to defendant's remaining contentions.  We reject defendant's contentions that the evidence is legally insufficient to support the conviction and that the verdict is against the weight of the evidence.  His challenge to the legal sufficiency of the evidence is preserved with respect to the conviction of criminal possession of a weapon in the second degree, but not with respect to the conviction of unlawful possession of marihuana (*see People v Gray*, 86 NY2d 10, 19).  In any event, defendant's challenge lacks merit (*see generally People v Bleakley*, 69 NY2d 490, 495).  Viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

Defendant further contends that reversal is required because he may have been convicted upon a theory not charged in the indictment.  "Preservation is not required inasmuch as '[t]he right of an accused to be tried and convicted of only those crimes and upon only those theories charged in the indictment is fundamental and nonwaivable' " (*People v Bradford*, 61 AD3d 1419, 1420-1421, *affd* 15 NY3d 329; *see People v Boykins*, 85 AD3d 1554, 1555, *lv denied* 17 NY3d 814).  Nevertheless, we reject that contention.  "It is well established that a defendant cannot be convicted of a crime based on evidence of an 'uncharged theory' " (*People v Gunther*, 67 AD3d 1477, 1478, quoting *People v Grega*, 72 NY2d 489, 496), but here, " 'defendant received the

requisite fair notice of the accusations against him' " (*People v Abeel*, 67 AD3d 1408, 1410), and the indictment did not limit the People to a particular theory of possession at trial.

In view of our determination, we do not address defendant's remaining contentions raised in his main and pro se supplemental briefs.

Entered:  February 1, 2013                    Frances E. Cafarell
                                              Clerk of the Court