People v Marlett (2021 NY Slip Op 01164)





People v Marlett


2021 NY Slip Op 01164


Decided on February 25, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021

111487

[*1]The People of the State of New York, Respondent,
v
Jose Marlett, Appellant.

Calendar Date: January 13, 2021

Before: Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Colangelo, JJ.


Paul J. Connolly, Delmar, for appellant.
P. David Soares, District Attorney, Albany (Emily Schultz of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered June 21, 2019 in Albany County, upon a verdict convicting defendant of the crimes of predatory sexual assault (eight counts), kidnapping in the second degree and robbery in the first degree (two counts).
On January 9, 2016, victim A was walking home from the grocery store when defendant approached her, while holding a knife, and demanded money. Victim A gave defendant her debit and grocery card, and he fled. Shortly thereafter, defendant abducted victim B, dragged her into his apartment and raped her repeatedly while threatening her verbally and with a knife. After several hours, defendant took victim B's keys and left the apartment to move her car. While defendant was gone, victim B covered herself in a towel, crawled out through a bedroom window and ran to a nearby restaurant. As defendant was returning to his apartment, he was picked up by police and, within hours, he was questioned by police.
As a result of these incidents, defendant was charged by a 20-count indictment with eight counts of predatory sexual assault, five counts of rape in the first degree, three counts of criminal sexual act in the first degree, one count of kidnapping in the second degree, two counts of robbery in the first degree and one count of robbery in the third degree. A jury found defendant guilty of all charges, rejecting his affirmative defense of lack of culpability by reason of mental disease or defect (see Penal Law § 40.15). At sentencing, Supreme Court dismissed the five counts of rape in the first degree and the three counts of criminal sexual act in the first degree, as lesser included offenses of predatory sexual assault, and the one count of robbery in the third degree, as a lesser included offense of robbery in the first degree. Defendant was then sentenced as a violent second felony offender to various concurrent and consecutive prison terms, resulting in an aggregate prison term of 110 years to life. Defendant appeals.
Defendant initially contends that the jury's rejection of his affirmative defense of not responsible by reason of mental disease or defect was against the weight of the evidence. We disagree. "For a weight of the evidence review, this Court must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and, if not, then weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Sanders, 185 AD3d 1280, 1284 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1115 [2020]). "When conducting this review, [this Court] consider[s] the evidence in a neutral light and defer[s] to the jury's credibility assessments" (People v Vega, 170 AD3d 1266, 1268 [2019] [internal quotation marks and citations omitted[*2]], lv denied 33 NY3d 1074 [2019]). With respect to defendant's affirmative defense, Penal Law § 40.15 provides that "it is an affirmative defense that when the defendant engaged in the proscribed conduct, he [or she] lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he [or she] lacked substantial capacity to know or appreciate either: 1. [t]he nature and consequences of such conduct; or 2. [t]hat such conduct was wrong." A defendant must prove these elements by a preponderance of the evidence (see People v Kohl, 72 NY2d 191, 193 [1988]; People v Somers, 161 AD2d 954, 954-955 [1990], affd 78 NY2d 1058 [1991]).
The People and defendant each presented experts who offered conflicting testimony as to defendant's mental health and his capacity to comprehend the nature and consequences of his actions. Defendant's expert, psychiatrist Stephen Price, diagnosed defendant with schizoaffective disorder after examining him and reviewing his various medical and psychiatric records. Price described defendant as having a long history of serious and persistent mental illness, starting in his youth. Price testified that these defects affected his thought process and resulted in delusional thinking and hallucinations. Price further testified that, approximately one month prior to the incidents, defendant was undergoing significant decompensation, which, when coupled with his increasing dependence, overuse of alcohol, noncompliance with medication and counseling treatment, resulted in his increased paranoia and his inability to control his behavior. In Price's professional opinion, with a reasonable degree of medical certainty, defendant was suffering from a mental disease or defect, as he lacked the substantial capacity to know or appreciate the nature and consequences of his acts or that they were wrong.
The People called psychologist Stuart M. Kirschner, who after examining defendant and reviewing his medical and psychiatric records, diagnosed defendant as having bipolar I disorder, antisocial personality disorder and alcohol use disorder. Kirschner testified that defendant's reporting of a "potpourri" of symptoms was not consistent with any mental disorder. He further opined that the symptoms described by defendant were preposterous, fabricated and the result of malingering,[FN1] and that defendant was a habitual violent predator. In determining that "not a shred" of evidence supports defendant's claim that, as a result of mental disease or defect, he lacked substantial capacity at the time of the offense to know or appreciate either the nature and consequences of his conduct or that such conduct was wrong, Kirschner specifically focused on the statements that defendant made to the victims and his behavior while being investigated by the police.
"[W]here conflicting expert testimony is presented, the question [of] [*3]whether the defendant suffered from a mental disease or defect at the time of the commission of the crime is for the fact finder, who may accept or reject the opinion of any expert" (People v Hadfield, 119 AD3d 1217, 1222 [2014] [internal quotation marks and citations omitted], lv denied 25 NY3d 989 [2015]). "[A]fter weighing the conflicting testimony, the strength of conflicting inferences from such testimony and the other proof presented at trial," we are unpersuaded that the jury's determination to reject the affirmative defense was against the weight of the evidence (People v Downs, 38 AD3d 1019, 1020 [2007], lv denied 8 NY3d 984 [2007]).
Defendant next asserts that Supreme Court's rulings related to voir dire violated his statutory and constitutional rights to meaningful participation in jury selection, to an impartial jury and to due process of law. Pursuant to CPL 270.15, both parties in a criminal trial shall be allowed to examine prospective jurors individually or collectively "regarding their qualifications to serve as jurors" (CPL 270.15 [1] [c]). Each party shall be afforded a fair opportunity to question the prospective jurors, but the trial court shall not permit questioning that is repetitious or irrelevant, or that questions a juror's knowledge of rules of law. The scope of such examination shall be within the discretion of the trial court (see CPL 270.15 [1] [c]).
Prior to jury selection, Supreme Court instructed counsel that they would each have 20 minutes to question prospective jurors in the first round and 15 minutes each in subsequent rounds. Additionally, the court stated that if either party desired more time, counsel should seek permission from the court. During the first round, defense counsel requested additional time, which Supreme Court granted, giving counsel five more minutes. Neither counsel requested additional time in the subsequent rounds. As long as counsel is afforded a fair opportunity to question prospective jurors about relevant matters, a restriction on the time allotted for voir dire is generally permissible (see People v Koury, 268 AD2d 896, 897 [2000], lv denied 94 NY2d 949 [2000]; People v Garrow, 151 AD2d 877, 877-878 [1989], lv denied 74 NY2d 948 [1989]). As the record does not support the conclusion that Supreme Court abused its discretion in limiting the amount of time for voir dire, we find that defendant's rights with respect thereto were not violated (see People v Winchell, 129 AD3d 1309, 1311-1312 [2015], lv denied 26 NY3d 973 [2015]; People v Wright, 13 AD3d 726, 727 [2004], lv denied 5 NY3d 857 [2005]; People v Dart, 186 AD2d 905, 907 [1992], lv denied 81 NY2d 787 [1993]).
Defendant also asserts that Supreme Court erred in refusing to instruct the prospective jurors as to the nature of his affirmative defense, thus preventing counsel from meaningfully questioning the prospective jurors. We disagree. The record reveals that defense counsel had a fair opportunity to question prospective [*4]jurors about defendant's affirmative defense, even though the court did not provide a specific preliminary instruction regarding it. Defendant's counsel was, from the outset of each round, able to ask extensive questions about the jurors' potential bias towards individuals who use mental illness as an excuse to break the law and about the insanity plea, and whether they could apply the law even if it meant finding that defendant was not responsible by reason of mental disease or defect (see People v Jean, 75 NY2d 744, 745 [1989]; People v Sewnarine, 156 AD3d 459, 459 [2017], lv denied 31 NY3d 1087 [2018]; People v Erickson, 156 AD2d 760, 761 [1989], lv denied 75 NY2d 966 [1990]). Furthermore, defendant has not shown that he was prejudiced by the court's failure to read an affirmative defense instruction during voir dire (see People v Steward, 17 NY3d 104, 113 [2011]; People v Jean, 75 NY2d at 745).
Defendant next contends that Supreme Court erred in denying his CPL 330.30 motion to set aside the verdict based on the court's bias against him. Specifically, defendant alleged that the court displayed facial expressions and gestures and tapped on the bench to get the prosecutor's attention. Since CPL 330.30 (1) does not allow a defendant to "expand the record to include matters that did not 'appear[] in the record' prior to the filing of the motions" (People v Giles, 24 NY3d 1066, 1068 [2014], cert denied 577 US 828 [2015]; see People v Soto, 160 AD3d 444, 445 [2018], lv denied 31 NY3d 1122 [2018]), and defendant did not object to any of these incidents when they occurred, his claim is not reviewable by this Court (see People v Giles, 24 NY3d at 1068). Defendant additionally contends that Supreme Court showed bias against him by the extreme cordiality given to the People's witnesses, with much less cordiality given to defense witnesses, and that the court sustained nearly all of the People's objections yet overruled many of defense counsel's objections. This claim is belied by the record as Supreme Court evenhandedly sustained and overruled all objections. As to defendant's contention that bias against him occurred when the court stated "step back" at the end of sidebar conferences, thus signaling ill feelings towards defense counsel, this contention is meritless. Both the prosecutor and defense counsel were in front of the court at the time of the statement and therefore it could not be construed as a negative remark directed solely at defense counsel. We find that Supreme Court's overall conduct during the trial did not convey to the jury any personal opinion regarding defense counsel, and defendant was therefore not deprived of a fair trial (see People v Galloza, 270 AD2d 69, 70 [2000], lv denied 95 NY2d 852 [2000]).
Lastly, defendant contends that his prison term was harsh and excessive. "Sentencing generally rests within the discretion of the trial court, and a legally permissible sentence will not be disturbed absent an abuse of the [*5]sentencing court's discretion or extraordinary circumstances" (People v Turner, 172 AD3d 1768, 1773 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 939 [2019]). Although defendant has a history of mental illness and had a traumatic childhood, defendant also has a lengthy criminal history, and his horrific acts will have a lifetime impact on victim B. As such, we find no abuse of discretion or extraordinary circumstances that would warrant a modification of defendant's sentence, which was within permissible statutory guidelines, in the interest of justice (see People v Reese, 166 AD3d 1057, 1062 [2018], lv denied 33 NY3d 953 [2019]; People v Stover, 178 AD3d 1138, 1147 [2019], lv denied 34 NY3d 1163 [2020]).
Egan Jr., J.P., Clark, Pritzker and Colangelo, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Kirschner defined malingering as fabricating or making up symptoms, in this case psychiatric symptoms, for a clearly identifiable ulterior motive for an identifiable reason.